Joanne I. SCOFI, Administratrix of the Estate of Charles S. Scofi, deceased, Plaintiff-Appellant Cross-Appellee,

v.

McKEON CONSTRUCTION COMPANY, et al., Defendants-Third-Party Plaintiffs-Appellees Cross-Appellants,

Howdeshell Plumbing, Inc., Etc., et al., Third-Party Defendants-Appellees.

No. 78–2224.

United States Court of Appeals, Fifth Circuit.*

Jan. 22, 1982.

Rehearing Denied Feb. 19, 1982.

Edwin J. Bradley, St. Petersburg, Fla., for Joanne I. Scofi.

Fowler, White, Gillen, Boggs, Villareal & Banker, Chris W. Altenbernd, Tampa, Fla., for McKeon Const.

MacFarlane, Ferguson, Allison & Kelly, John R. Bush, Claude H. Tison, Jr., Tampa, Fla., for Howdeshell Plumbing.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Before JONES, GEE and REAVLEY, Circuit Judges.

JONES, Circuit Judge:

McKeon Construction Company was engaged in the erection of a condominium upon a site owned by it in Pinellas County, Florida. It contracted with Howdeshell Plumbing, Inc. to do the plumbing work. Charles Scofi, an employee of Howdeshell, was working in a trench at the construction site. A cave-in caused injuries to him and his subsequent death. His widow, Joanne I. Scofi, brought a wrongful death action against McKeon and its insurance carrier, Argonaut Insurance Company. Mrs. Scofi asserted that McKeon negligently created or permitted to continue a dangerous condition which caused the injury to and death of her husband. McKeon and its insurer filed a third-party complaint against Howdeshell and its insurer seeking indemnity. In this pleading it was alleged that if McKeon had been negligent at all its negligence was passive in contrast to the active negligence of Howdeshell. A jury trial resulted in a verdict that McKeon was not negligent. Mrs. Scofi moved for a judgment notwithstanding the verdict. The motion was denied. On appeal Mrs. Scofi questions the adequacy of the jury instructions, the admissibility of certain testimony and the failure to grant her motions for judgment notwithstanding the verdict.

The first contention of Mrs. Scofi is that the jury charge was insufficient. The case should have been submitted to the jury, she says, on the theory set out in the Restatement of Torts, Second.[1] Whether the Restatement rule is the law of Florida is the initial question here. The law of Florida as to the potential tort liability between employers of independent contractors and the employees of those independent contractors is stated in *Florida Power & Light Co. v. Price*, 170 So.2d 293 (Fla.1964). Florida Power & Light had entered into a contract with Harlan Electric Company which provided that Harlan would construct an electric distribution system in a new subdivision to be connected to Florida Power's electric transmission system. Price was an employee of Harlan. Price alleged that while he was on a power pole a fellow Harlan employee on another pole several feet away negligently allowed a jumper wire to come close enough to cause an electrical arc which energized the wire on which Price was working. Price was severely injured. He alleged that Florida Power knew of the danger inherent in work done on or around wires charged with high voltage electricity; that Florida Power knew the second pole carried wires so energized an owed Price a high degree of care to provide safe working conditions; and that Florida Power allowed Harlan's employees to energize the new distribution system without properly supervising and controlling them. The trial court dismissed the complaint and entered judgment against Price. The district court of appeal reversed, holding that the complaint did not allege facts showing that Florida Power was negligent but did state a cause of action against Florida Power based on the dangerous instrumentality and inherently dangerous work doctrines. The Florida Supreme Court then held that the district court of appeal:

"Failed to take into consideration exceptions to the doctrines upon which it predicates [Florida Power's] liability.

"We make special reference to cases where the plaintiff was an employee of an independent contractor and sued the owner of the dangerous instrumentality

1. One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

(a) fails to provide in the contract that the contractor shall take such precautions, or

(b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions. Restatement of Torts, 2d, § 413.

or agency, or sued one for whom inherently dangerous work was being performed. (The court cited and discussed, among other cases, *Fry v. Robinson Printers, Inc.*, 155 So.2d 645 (Fla.2d D.C. A.1963); *Petitte v. Welch*, 167 So.2d 20 (Fla.3d D.C.A.1964).) . . .

"[Price] was employed by the independent contractor and was not a third party member of the public. He did not allege he was unaware of the hazards incident to the performance of his work. The district court of appeal expressly found his complaint did not allege facts [showing that Florida Power was negligent]. . . .

"It is true [that Florida Power] is engaged in selling electricity and is one of the class of persons referred to in F.S. § 769.01, F.S.A. (persons engaged in hazardous occupations), but this alone does not render it liable for injuries to an employee of its independent contractor caused by the negligence of a fellow. employee of the independent contractor unless it can be shown [that Florida Power] in some way contributed or concurred in the act of negligence. . . .

"It may well be that said doctrines (dangerous instrumentality and inherently dangerous work) apply without exception to third party members of the public, but we do not believe they apply without exception under all circumstances where an independent contractor and his employees are involved, absent any allegation or showing of an act of negligence or omission of duty or proper care on the part of a defendant engaged in a hazardous occupation who has contracted with the independent contractor to perform inherently dangerous work. . . .

"We hold that liability flowing from operation of the doctrines of dangerous instrumentalities and inherently dangerous work is subject to the exception that where the defendant owner contracts with an independent contractor for the performance of inherently dangerous work and the latter's employee is injured by a dangerous instrumentality owned by the defendant which is negligently applied or operated by another employee of the independent contractor but wholly without any negligence on the part of the defendant owner, the latter will not be held liable. The incidence of the independent contractor and injury to his employee in the course of the performance of the inherently dangerous work absent any negligence on the part of the contracting owner absolves the latter from liability. This exception, as stated, although not expressly spelled out in prior appellate decisions, is gleaned from the decisions cited.

". . . The independent contractor is usually placed in charge of the work site and is responsible for all incidental contingencies and is aware or presumed to be aware of the usual hazards incident to the performance of his contract. Unless and until it is shown the contracting owner by positive act of negligence or negligent omission on his part causes injury to the independent contractor or to the latter's employee or employees, such owner will not be held liable. . . . Such an exception would not be applicable where members of the general public are injured since they are not embraced in the relationship created by the independent contract." 170 So.2d 296–99.

The opinion in Price sets forth the law of Florida. Based on that decision we conclude that in Florida § 413 of the Restatement (Second) of Torts does not apply in the circumstances of this case. Section 413 places an affirmative duty upon the employer of the independent contractor to take special precautions itself or to see that such precautions are taken in situations where the independent contractor is employed to perform inherently dangerous work. Price does not place an affirmative duty upon the employer where, as here, the plaintiff is an employee of the independent contractor rather than a third-party member of the public.[2] The district court of

---

2. Our decision in *Emelwon, Inc. v. United States*, 391 F.2d 9 (5th Cir. 1968), is inapposite to the present case. In Emelwon, the plaintiffs were third party members of the public.

appeal would have placed a duty upon the employer to take "proper precautions," and would have made the taking of those precautions a "non-delegable duty owing to third persons," including employees of the independent contractor. But the Florida Supreme Court rejected the lower appellate court's analysis, "mak[ing] special reference to cases where the plaintiff was an employee of an independent contractor ..." The Supreme Court distinguished between cases where the plaintiff was an employee of the independent contractor and those where the plaintiff was a third party member of the public. For the former class of cases, the Supreme Court required an "allegation or showing of an act of negligence or omission of duty or proper care" on the part of the employer of the independent contractor; a showing that the employer "in some way contributed or concurred in the act of negligence"; or a showing that the contracting owner "by positive act of negligence or negligent omission" caused injury to the independent contractor or its employee. The court's decision makes it clear that general allegations of negligence are not sufficient. The plaintiff employee must show a positive act of negligence, or, at the very least, he must make specific, detailed allegations of negligence. Price made general allegations in his complaint that Florida Power was negligent. Price's general allegations were inadequate.

In the present case, Mrs. Scofi's allegations are even more general than were Price's allegations. Her amended complaint contains only one pertinent paragraph:

"4. Deceased's said injuries were suffered when an excavation caved in upon him while working on premises owned and controlled by defendant who was engaged in construction thereon. Defendant negligently created or permitted to continue the condition which caused said cave-in."

Although the jury concluded that the work which McKeon engaged Howdeshell to do was inherently dangerous, it found that McKeon was not negligent. This finding is supported by the record.

Under Florida law, McKeon had no affirmative duty to Howdeshell's employees to take special precautions against dangers involved in the digging of the trench and the laying of the sewer pipe or to see that such precautions were taken. We conclude that Mrs. Scofi was not entitled to jury instructions which paraphrased or incorporated Restatement 2d Torts § 413. The instructions given by the district court were sufficient under Price.[3]

Mrs. Scofi's second contention is that the district court erred in admitting into evidence certain testimony given by McKeon's project manager which she alleges was hearsay. Edward R. Whatley was McKeon's project manager for the condominium project on which Mr. Scofi was working at the time of the cave-in. He testified that his responsibility was to oversee the work of the independent contractors to see that they completed their work for McKeon; that he arrived at the scene of the cave-in shortly after it occurred; that there he saw Howdeshell's superintendent, John Pettway; and that after observing the caved-in trench, he had a brief conversation with Pettway:

"Q What did you say to Mr. Petteway (sic)?

  .        .        .        .        .

A I cannot recall the exact words, but it was an admonishment to him that he should have used a little more safety precaution.

Q Okay. Relative to the digging of the ditch?

A Yes.

Q Do you recall exactly what safety precautions you told him he should have used?

3. Indeed, because the phrase "to take proper precautions" was included in the district court's instructions, they were more favorable

to Mrs. Scofi than they need necessarily have been under Price.

A  I didn't tell him that, sir.

Q  What did he say to you—

.   .   .   .   .

A  He told me to mind my business and he would mind his part of it."

Mrs. Scofi asserts that the statements that Whatley testified were made by Pettway were hearsay; that the jury could readily have inferred from the exchange that Pettway knew and understood that the responsibility for safety precautions belonged to Howdeshell, not McKeon; and that the jury may well have considered this evidence in determining whether McKeon had been negligent. The district court did not err in admitting Whatley's testimony. The statements which Whatley testified were made by Pettway were not hearsay. Rule 801(d)(2)(D) of the Federal Rules of Evidence provides:

"(d) Statements which are not hearsay. A statement is not hearsay if—

.   .   .   .   .

(2) Admission by party-opponent. The statement is offered against a party and is ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship ...."

During the course of the trial, McKeon's third-party claim for indemnity against Howdeshell was still in suit. The district court admitted Whatley's testimony concerning Pettway's statements because Pettway was the third-party defendant's superintendent. The requirements of Rule 801(d) (2)(D) were met. Pettway's statements related to a matter within the scope of his employment and were made while he was on the job. See 11 Moore's Federal Practice § 801.01[6], at VIII–29 (Advisory Committee Notes) and § 801.50[5], at VIII–43 (2d ed. 1976); *Callon Petroleum Co. v. Big Chief Drilling*, 548 F.2d 1174, 1177 n.3 (5th Cir. 1977).

■ Mrs. Scofi's third contention is that the district court erred in denying her motion for a judgment NOV. It is clear that the district court did not err on its ruling. The jury's verdict is supported by the record. Since we conclude that the contentions of Mrs. Scofi are without merit, the district court's judgment in favor of McKeon is

AFFIRMED.