

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-20-1995

# Monk v VI Water & Power Auth

Precedential or Non-Precedential:

Docket 94-7372

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Monk v VI Water & Power Auth" (1995). *1995 Decisions.* Paper 106.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/106

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 94-7372
_____

TED MARK MONK,
          Appellant

v.

VIRGIN ISLANDS WATER & POWER AUTHORITY;
QUALITY ELECTRIC SUPPLY COMPANY

_____

On Appeal from the District Court of the Virgin Islands
Division of St. Croix
(D.C. Civil Action No. 91-cv-00077)
_____

Argued December 5, 1994

Before:  SLOVITER, Chief Judge,
SCIRICA and COWEN, Circuit Judges

(Filed April 20, 1995)


                    THOMAS ALKON, ESQUIRE (Argued)
                    Alkon, Rhea & Hart
                    2115 Queen Street, Suite 101
                    Christiansted, St. Croix
                    U.S. Virgin Islands 00820

                    Attorney for Appellant


                    RHYS S. HODGE, ESQUIRE
                    Law Offices of Rhys S. Hodge
                    19 Norre Gade
                    P.O. Box 6520
                    Charlotte Amalie, St. Thomas
                    U.S. Virgin Islands 00804

Attorney for Appellee,
Virgin Islands Water
& Power Authority

R. ERIC MOORE, ESQUIRE (Argued)
Law Office of R. Eric Moore
Downtown Station
P.O. Box 3086
Christiansted, St. Croix
U.S. Virgin Islands 00822

Attorney for Appellee,
Quality Electric Supply Company

———————————

OPINION OF THE COURT

———————————

SCIRICA, Circuit Judge.

In this appeal, we are required to interpret and apply various sections of the Restatement (Second) of Torts to a lawsuit arising from a tragic construction accident in the Virgin Islands. The primary issue is the viability of Restatement section 343A, involving the doctrine of assumption of risk, in light of the Virgin Islands' adoption of a comparative negligence statute. We also consider whether employers may be liable for injuries to their independent contractors' employees under Restatement section 413 and similar provisions. The district court granted summary judgment to the defendant landowner, holding that the Restatement provisions shielded it from tort claims by a worker injured on the property. We will affirm.

I.

In June 1990, a fire destroyed a building on St. Croix owned by Quality Electric Supply Company. The following month Quality Electric contracted with Benak Construction Company to demolish the remains of the original structure and to construct a

new building. Ted Monk, Sr., a partner in Benak and head of the project, named his son, Ted Monk, Jr. ("Monk"), as foreman of the site.

At the time of construction, the Virgin Islands Water & Power Authority ("WAPA") maintained 7,200-volt power lines several feet above part of the proposed building. The power lines were clearly visible, and there is no dispute that everyone involved with the project knew about the lines and that any contact with them would be dangerous.[1] On November 8, 1990, a crane was being used to lift steel joists that would connect the columns of the building frame. The first joist was installed with the use of a "tag line," a rope attached to the beam to prevent it from swinging. Monk decided not to use a tag line to install the next joist, however, because he thought he could better control the joist from swinging by holding it directly with his hands. At this point, Monk, Sr., yelled for his son to use a tag line. As Monk prepared to do so, the steel joist touched an overhead power line, sending an electrical current through his body. He suffered severe burns that resulted in the amputation of both his legs and his left arm.

_____

[1]. As the district court noted, the Benak supervisor at the site, Paul Christoff, testified in his deposition that "everyone present at the work site knew that the lines were energized. In fact, Christoff heard Monk, Sr., specifically tell his son, the plaintiff, to be careful of the lines because they were 'hot.'" See Monk v. Virgin Islands Water & Power Auth., No. 91-0077, slip op. at 3 n.2 (D.V.I. Jan. 24, 1994). For direct evidence of the plaintiff's knowledge of the power lines and their danger, see infra part II.C.

Monk then filed this suit for personal injuries against Quality Electric and WAPA.  The district court granted summary judgment in favor of Quality Electric, but denied summary judgment to WAPA.  Monk v. Virgin Islands Water & Power Auth., No. 91-0077 (D.V.I. Jan. 24, 1994).  Monk settled with WAPA, but appealed the district court's judgment as to Quality Electric.

The district court had jurisdiction of the case pursuant to 48 U.S.C. § 1612 (1988).  We have jurisdiction under 28 U.S.C. § 1291 (1988), and our review of a grant of summary judgment is plenary.  Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 989 F.2d 635, 637 (3d Cir. 1993).  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

## II.

In the Virgin Islands, the various Restatements of law provide the rules of decision in the absence of local laws to the contrary.  V.I. Code Ann. tit. 1, § 4 (1967);[2] Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1033 (3d Cir. 1987).  We are called upon here to determine whether section 343A of the

_____

[2]. V.I. Code Ann. tit. 1, § 4 (1967) provides:

> The rules of the common law, as expressed in the restatements of the law approved by the American Law Institute, and to the extent not so expressed, as generally understood and applied in the United States, shall be the rules of decision in the courts of the Virgin Islands in cases to which they apply, in the absence of local laws to the contrary.

Restatement (Second) of Torts (1965) survives enactment of the Virgin Islands comparative negligence statute.

A.

At common law, a plaintiff's contributory negligence barred any subsequent recovery for damages, even if the plaintiff was only slightly at fault.  W. Page Keeton et al., Prosser and Keeton on the Law of Torts §§ 65, 67, at 451–52, 468–69 (5th ed. 1984); Restatement (Second) of Torts § 467.  Similarly, the common law doctrine of assumption of risk prevented recovery when a plaintiff was deemed to have assumed the risk of a known danger.  Keeton et al., supra, § 68, at 495–96; Restatement § 496A.

While these rules were still in force throughout most of the United States, the American Law Institute incorporated section 343A on "Known or Obvious Dangers" into the Restatement (Second) of Torts.  Section 343A provides in relevant part:

A possessor of land is not liable to his invitees[3] for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

---

[3]. The Restatement definition of "invitee" includes a "business visitor," which is defined as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Restatement § 332.  There is no dispute that Monk is an "invitee," within the meaning of the Restatement.

(footnote added).  Section 343A's focus on dangers "known or obvious" to invitees, along with pertinent commentary,[4] indicated it was intended as a variation on the doctrine of assumption of risk.  See, e.g., Koutoufaris v. Dick, 604 A.2d 390, 395-96 (Del. 1992) (noting section "343A's apparent espousal of assumption of risk as a bar to recovery").

Soon after adoption of the Second Restatement in 1965, however, the principle of apportioning damages between negligent plaintiffs and defendants under a comparative fault system began "veritably sweeping the land."  Keeton et al., supra, § 67, at 479.  "Although by the mid-1960s only seven states had replaced contributory negligence with comparative fault, several states switched over in 1969, and the 1970s and early 1980s witnessed a surge of legislative and judicial action accomplishing the

---

[4]. For example, comment e to section 343A provides:

> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes.  If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so.  Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

switch."  Id. at 471 (footnotes omitted).  All but four states
now have adopted the doctrine.[5]

The movement toward comparative negligence, however,
raised questions concerning the continued viability of the
assumption of risk defense,[6] which often resembled contributory
negligence.[7]  See, e.g., id. § 68, at 495 ("The rise of

---

[5].  Those four states are Alabama, Maryland, North Carolina, and
Virginia.  See Jean W. Sexton, Recent Decision, Tort Law --
Assumption of Risk and Pennsylvania's Comparative Negligence
Statute: Howell v. Clyde, 67 Temp. L. Rev. 903, 903 & n.2 (1994);
see also Williams v. Delta Int'l Mach. Corp., 619 So. 2d 1330,
1333 (Ala. 1993); Harrison v. Montgomery County Bd. of Educ., 456
A.2d 894, 905 (Md. 1983); Campbell v. Baltimore Gas & Elec. Co.,
619 A.2d 213, 219 (Md. Ct. Spec. App.), cert. denied, 627 A.2d
538 (Md. 1993); Miller v. Miller, 160 S.E.2d 65, 73 (N.C. 1968);
Bowden v. Bell, 446 S.E.2d 816, 819 (N.C. Ct. App. 1994);
Litchford v. Hancock, 352 S.E.2d 335, 337 (Va. 1987).

[6].  Our discussion involves only the implied form of assumption
of risk, not a defense based on an express contract.  Defenses
based on express assumption of risk remain valid in virtually all
jurisdictions.  See, e.g., W. Page Keeton et al., Prosser and
Keeton on the Law of Torts § 68, at 496 (5th ed. 1984) (footnotes
omitted) ("[A]bsent policy reasons for prohibiting contractual
disclaimers of this type in certain contexts, an express
assumption of risk by the plaintiff should continue to serve as a
total bar in comparative negligence cases."); 1 J.D. Lee & Barry
A. Lindahl, Modern Tort Law § 9.07, at 250 (1988) ("In
jurisdictions which have adopted comparative fault statutes, it
has generally been held that the defense of express assumption of
risk survives the enactment of such statutes."); 3 Stuart M.
Speiser et al., The American Law of Torts § 13:39, at 808 (1986)
("Express assumption of risk, as distinguished from implied
assumption of risk, has retained its viability as an absolute
defense despite the advent of comparative negligence.  This
proposition is supported by cases from numerous jurisdictions.").

[7].  For a discussion of the different forms of assumption of
risk, see infra part II.B; cf. Restatement § 496A cmt. c; Keeton,
supra, § 68, at 480-81 & 481 n.10.  For purposes of this case, we
adhere to the distinctions noted in Keegan v. Anchor Inns, Inc.,
606 F.2d 35, 39-41 (3d Cir. 1979).  As we explained in Keegan,
"Assumption of risk in its secondary sense is ordinarily
synonymous with contributory negligence and involves a failure to

comparative negligence has forced the courts and commentators to consider afresh the proper role for the assumption of risk defense."). Some jurisdictions that abolished contributory negligence also eliminated assumption of risk by statute.[8] Other states left the issue for their courts to decide, which resulted in a range of decisions across the spectrum.[9] Most courts rejected the defense,[10] others continued it, and some supported certain forms of it but rejected others.[11]

(..continued)
exercise reasonable care for one's own safety. . . . Assumption of risk in its primary and strict sense involves voluntary exposure to an obvious or known danger which negates liability." Id. at 39 n.5 (citations omitted).

[8]. "[S]everal comparative negligence statutes by their terms abolish assumption of risk, in addition to contributory negligence, as defenses that will bar liability altogether." Keeton et al., supra, § 68, at 495-96 (citing several cases and statutes); see also Speiser et al., supra, § 13:33, at 787 ("There are a number of jurisdictions in which implied assumption of risk was abolished by statute.").

[9]. Keeton et al., supra, § 68, at 496 ("Most of the statutes, however, are silent on assumption of risk, and so the matter has been thrown over to the courts."); Speiser et al., supra, § 13:33, at 787 ("[I]n most jurisdictions, the statute by which comparative negligence was enacted did not expressly deal with assumption of risk, leaving it to the courts to deal with the viability of the doctrine . . . .").

[10]. See, e.g., Lee & Lindahl, supra, § 9.05, at 246 ("[M]ost states have allowed the entire concept [of assumption of risk] to be subsumed within comparative negligence by either abrogating it or providing for its merger with comparative fault principles."); Speiser et al., supra, § 13:33, at 787 ("[T]here are a number of jurisdictions, decidedly representing a minority, in which assumption of risk was retained as a separate defense under the comparative negligence system.").

[11]. For a state-by-state analysis of the viability of assumption of risk after adoption of comparative negligence, see Speiser et al., supra, §§ 13:33-:39, at 784-809; see also Keeton et al.,

Depending upon their position on the viability of assumption of risk, courts also decided whether to continue using section 343A of the Restatement.  As with assumption of risk generally, some courts opted to continue using section 343A,[12] others decided against it, and still others decided the applicability of section 343A depended on the type of assumption of risk involved.[13]

B.

In 1973, the Virgin Islands abolished the common law rule that a plaintiff's contributory negligence barred any recovery.  In its place, it adopted a comparative negligence statute that apportioned fault between the plaintiff and defendant.  See V.I. Code Ann. tit. 5, § 1451 (Supp. 1993);[14]

(..continued)
supra, § 68, at 495-498; Lee & Lindahl, supra, § 9.05, at 245-247.

[12].  See, e.g., Carrender v. Fitterer, 469 A.2d 120, 124-25 (Pa. 1983).

[13].  See, e.g., Koutoufaris v. Dick, 604 A.2d 390, 398 (Del. 1992) (rejecting use of section 343A when the alleged assumption of risk was secondary type, but noting that it "might well" apply when assumption of risk was primary type).  For a summary of judicial opinion regarding the applicability of section 343A in comparative negligence jurisdictions, see id. at 395-98.

[14].  V.I. Code Ann. tit. 5, § 1451(a) (Supp. 1993) provides in relevant part:

> In any action based upon negligence to recover for injury to person or property, the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff.  The burden of proving contributory negligence shall be on the defendant.  If such claimant is found by

Keegan v. Anchor Inns, Inc., 606 F.2d 35, 37–38 (3d Cir. 1979). Monk contends this statute implicitly abolished assumption of risk as a defense, thereby contradicting Restatement section 343A and nullifying its viability.

In Keegan, id. at 37–41, we examined the Virgin Islands comparative negligence statute and its effect on the doctrine of assumption of risk. We held the statute abrogated one type of the assumption of risk defense, but left the other form intact:

> Assumption of risk is not necessarily grounded on the concept of fault. Sometimes the defense has been invoked when the plaintiff's conduct could be characterized as negligent; sometimes it has been invoked in its "strict" or "primary" sense when the conduct amounted to consent. In those cases where the plaintiff's conduct amounts to negligence, that fact should be accorded weight only within the comparative scheme of the statute. In such a case assumption of risk is not available as a bar to recovery. . . . It follows that when conduct amounts to a voluntary waiver or consent the absolute bar to recovery should remain.

(..continued)
> the trier of fact to be more at fault than the defendant, or, in the case of multiple defendants, more at fault than the combined fault of the defendants, the claimant may not recover.

Id. at 40.  We employed this distinction between the two types of

assumption of risk in Smollett v. Skayting Development Corp., 793

F.2d 547 (3d Cir. 1986).  In Smollett, a woman injured while ice

skating sued the operator of the rink, complaining that the lack

of guardrails and the carpeted floor surrounding the ice caused

her injuries.  The jury found for the plaintiff, and the district

court denied the defendant's motion for a judgment

notwithstanding the verdict.  On appeal, we reversed and directed

the district court to enter judgment for the defendant, holding

that the evidence showed the plaintiff "fully understood the risk

of harm to herself and voluntarily chose to enter the area of

risk.  She, therefore, implicitly assumed the risk of injury."

Id. at 548 (citation omitted).  In so ruling, we reiterated the

comparative negligence statute's effect on assumption of risk:

> Assumption of risk is still available as a
> complete defense to a negligence claim but it
> has been limited by enactment of the
> comparative negligence statute.  Assumption
> of risk, to the extent it incorporates the
> concept of fault on the part of the actor
> and, therefore, overlaps with contributory
> negligence, is no longer available as a
> defense.  However, assumption of risk can
> still be applied to "non-negligent conduct
> which constitutes waiver or consent" but
> which involved no negligence.  In such cases
> the absolute bar to recovery remains.

Id. (quoting Keegan, 606 F.2d at 41 n.8).  Therefore, the

"primary" form of assumption of risk remains a viable defense in

the Virgin Islands.[15]  Because Restatement section 343A requires

---

[15].  We disagree with Monk's assertion that the judicial
rejection of sections 343 and 343A under federal admiralty law
controls this case.  It is true that we have held those

a plaintiff's implicit acquiescence to "known or obvious dangers," the essence of the primary form of assumption of risk, this Restatement provision also remains valid under Virgin Islands law.

We recognize our holding on assumption of risk may not represent the view of a majority of jurisdictions.[16]  But many of

(..continued)
Restatement sections inapplicable to actions arising under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b).  See Davis v. Portline Transportes Maritime Internacional, 16 F.3d 532, 542 n.7 (3d Cir. 1994) (noting that "[s]ome portions of the Restatement's approach, however, clearly do not fit within the paradigm the Act constructs" and citing section 343A as an example); Rich v. United States Lines, Inc., 596 F.2d 541, 551 n.21 (3d Cir. 1979) ("Sections 343 and 343A of the Restatement (Second) of Torts . . . are both inconsistent with Section 905(b) and therefore should not be relied upon to create a duty on the part of the ship owner."); see also Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 168 n.14 (1981) (stating that "those sections, while not irrelevant, do not furnish sure guidance in cases such as this").  But we rejected those sections because Congress, in amending the Longshore and Harbor Workers' Compensation Act, expressly indicated its intent to abolish assumption of risk when it eliminated contributory negligence.  See id. at 166 n.13 ("The Committees also anticipated that in § 905(b) cases, as in other admiralty cases, the rule of comparative negligence would apply and the defense of assumption of risk would be barred."); H.R. Rep. No. 1441, 92d Cong., 2d Sess. 8 (1972), reprinted in 1972 U.S.C.C.A.N. 4698, 4705 ("[T]he Committee intends that the admiralty rule which precludes the defense of 'assumption of risk' in an action by an injured employee shall also be applicable.").  Similarly, some state legislatures also barred assumption of risk when they approved comparative negligence statutes.  See supra note 8 and accompanying text.

In abolishing contributory negligence, however, the Virgin Islands legislature never gave any indication whether it intended to bar assumption of risk.  Thus, the maritime actions are distinguishable.  In any event, as the Supreme Court has stated, "maritime negligence actions are not necessarily to be governed by principles applicable in nonmaritime contexts." Scindia Steam, 451 U.S. at 168 n.14.

[16].  See supra note 10 and accompanying text.

the contrary cases are distinguishable, largely because relevant

statutes eliminating contributory negligence often expressly

barred the assumption of risk defense.[17] Furthermore, we have

interpreted the statute in this manner consistently since its

1973 enactment. We acknowledge the existence of strong policy

reasons for completely abandoning the doctrine of assumption of

risk as an absolute bar to recovery,[18] just as there are

compelling reasons to maintain the defense in its limited form.[19]

But unlike other jurisdictions, where the Restatement merely

serves as a summary of general legal principles for courts to

accept or reject, the Virgin Islands has designated the

Restatement as its law, until a contrary statute is approved.[20]

Therefore, if the Virgin Islands wishes to abrogate the doctrine

---

[17]. See supra note 8 and accompanying text.

[18]. See, e.g., Sexton, supra, at 905 ("[A]ssumption of risk
clearly circumvents the purpose of the comparative negligence
statute by precluding recovery even if the plaintiff's actions
were reasonable or caused only one percent of the total harm . .
. ."); see also id. at 903 & n.4 (listing commentators who
"advocate the complete abolition of the assumption of risk
defense").

[19]. See, e.g., Keeton et al., supra, § 68, at 496 (footnotes
omitted) ("'[P]rimary' implied assumption of risk should also
logically continue to be an absolute bar after the adoption of
comparative fault . . . . This is because assumption of risk in
this form is really a principle of no duty, or no negligence, and
so denies the existence of any underlying cause of action.
Without a breach of duty by the defendant, there is thus
logically nothing to compare with any misconduct of the
plaintiff."); see also Sexton, supra, at 903 & n.3 (listing
commentators supportive of the continuation of assumption of risk
under comparative negligence).

[20]. See supra note 2.

of assumption of risk, along with section 343A of the Restatement, its legislature must say so, as it did in 1973 with contributory negligence.

C.

In applying section 343A of the Restatement to this case, the district court granted summary judgment to Quality Electric because "it was Monk's decision not to use a tag line and instead to hold onto the metal beam that precipitated his injuries. Monk cannot now try to shift the liability to Quality Electric simply because they owned the land where the work was performed." Monk, No. 91-0077, slip op. at 12.

To the extent the district court based its decision on Monk's negligence (or contributory negligence), we believe it erred. Instead, the court should have focused on evidence demonstrating Monk's awareness of and consent to a "known or obvious" danger. Evidence of Monk's negligence is relevant only to show the type of secondary assumption of risk that "incorporates the concept of fault on the part of the actor and, therefore, overlaps with contributory negligence." Smollett, 793 F.2d at 548. As we have held, such evidence is no longer permitted in the Virgin Islands to bar a plaintiff's cause of action, but rather only may be used to apportion fault between plaintiffs and defendants. Id.; Keegan, 606 F.2d at 39-41.

Nevertheless, as in Smollett, we have little difficulty in concluding as a matter of law that plaintiff "fully understood the risk of harm to h[im]self and voluntarily chose to enter the area of risk." 793 F.2d at 548. Although the issue of whether a danger was "known or obvious" generally is a question of fact for a jury, cf. Restatement § 496D cmt. e, there is no dispute in this case that Monk actually knew of the risk posed by the power

lines.  As the district court noted, "At all relevant times, the Benak Construction crew knew that the power lines were energized and posed a possible danger."  Monk, No. 91-0077, slip op. at 3. In his deposition, Monk admitted that "I did pay attention to the location of the lines.  I looked at them, everybody else on the job had looked at them."  He stated he knew that "if somebody came in contact with [the power lines], then they were going to get electrocuted, get hurt."  Id. at 4 n.2.  As foreman, Monk testified he warned others about the danger posed by the power lines:  "[A]s I said earlier, I was always trying to stress how dangerous they were and to be careful around them."  Id. Although Monk contends he did not know the lines were uninsulated and the level of their voltage, these factors do not change the fact that he knew the location of the lines and that they posed a serious danger.  Thus, he "assumed the risk of injury." Smollett, 793 F.2d at 549.[21]

---

[21].  Section 343A provides that owners of land are not liable to invitees for "known or obvious" dangers, "unless the possessor should anticipate the harm despite such knowledge or obviousness."  The Restatement commentary provides guidance on the meaning of this exception to the rule:

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it.  Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

D.

Monk also asserts that Quality Electric violated its duties under section 343 of the Restatement (Second) of Torts, which involves "Dangerous Conditions Known to or Discoverable by Possessor."[22]  We cannot agree.  The Restatement provides that sections 343 and 343A "should be read together," with the latter section dealing "with the effect of the fact that the condition is known to the invitee, or is obvious to him . . . ."

(..continued)

Restatement § 343A cmt. f.  This exception does not apply in circumstances like the present, in which the visitor on the land has been hired precisely for the work that involves or creates the risk itself.  In such circumstances, the landowner has no reason to expect that the visitor will be distracted or forget about the danger.  Here, Monk's testimony reveals he was acutely aware of the power lines at the time of the accident, and that is why he chose to proceed without a tag line.  See Monk, No. 91-0077, slip. op. at 4 & n.3.  Indeed, as foreman, Monk repeatedly warned others to be careful around the power lines.  See discussion in text.

[22].  Section 343 provides:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
>     (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
>     (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
>     (c) fails to exercise reasonable care to protect them against the danger.

Restatement § 343 cmt. a.  By contrast, section 343 is intended to apply "to protect invitees from non-obvious dangerous conditions on the land."  Rolick v. Collins Pine Co., 975 F.2d 1009, 1011 (3d Cir. 1992), cert. denied, 113 S. Ct. 1417 (1993).[23]  We have held that the power lines above Quality Electric's land were both "known" and "obvious"; thus, section 343 does not apply here.

### III.

Finally, Monk argues that Quality Electric violated its duty under Restatement section 413, which involves an employer's "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor."  Section 413 provides:    One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical

---

[23].  See also Rich v. United States Lines, Inc., 596 F.2d 541, 563 (3d Cir. 1979) (Garth, J., concurring) (citation omitted) (Sections 343 and 343A "establish that the 'possessors of land . . .  are liable for physical harm caused to invitees by dangerous conditions which are not obvious to the invitee (§ 343), but are absolved from liability when dangerous conditions are known or obvious, except when the possessor should anticipate the harm despite the invitee's knowledge or the obviousness of the condition. (§ 343A).'").

harm caused to them by the absence of such precautions if the employer

     (a) fails to provide in the contract that the contractor shall take such precautions, or

     (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

At common law, the general rule was that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants."  Restatement § 409; see also Williams v. Martin Marietta Alumina, Inc., 817 F.2d 1030, 1036 (3d Cir. 1987).  Yet, courts began recognizing so many exceptions to that rule "that it can now be said to be 'general' only in the sense that it is applied where no good reason is found for departing from it." Restatement § 409 cmt. b.  The Restatement divided the exceptions into those based on an employer's direct negligence, see §§ 410–15, and those involving vicarious liability imposed on the employer due to the negligence of the independent contractor, see §§ 416–29.  See Restatement ch. 15, topic 2, introductory note, at 394.  Therefore, any liability under section 413 must be based on an employer's direct negligence.

Quality Electric urges us to consider whether the word "others," under section 413 and elsewhere in chapter 15 of the Restatement, even encompasses an independent contractor's employees, thereby allowing them to file suit against their employer's employer for injuries sustained on the job.  Courts

for the Virgin Islands are divided on this issue,[24] as are other

courts throughout the country.  See Keeton et al., supra, § 71,

at 514 n.63 ("There is disagreement over whether the doctrine

protects third parties only or includes as well the contractor's

employees.").

---

[24]. In 1975, the District Court of the Virgin Islands ruled that the meaning of "others," under sections 416 and 427 of the Restatement, did not encompass employees of an independent contractor. Munson v. Duval, 11 V.I. 615, 630-33 (D.V.I. 1975). A decade later, in "reaffirm[ing]" that rule, the court noted:

> Time has proven the wisdom of Chief Judge Christian's holding in Munson, supra, as jurisdiction after jurisdiction issued a ruling to the same effect. The net result is that today, ten years later, the overwhelming number of jurisdictions are uniform in their interpretation of the word "others" in Chapter 15 of the Restatement of Torts, (Second), as excluding employees of independent contractors.

Gibson v. Sullivan Trail Coal Co., 608 F. Supp. 390, 392 (D.V.I.), aff'd, 782 F.2d 1028 (3d Cir. 1985); see also Harris v. No. 1 Contracting Corp. Excavation Constr. Co., 22 V.I. 3, 7-9 (V.I. T.C. 1986) (applying Gibson).

Other courts in the Virgin Islands have attempted to limit such holdings to situations in which employers were sued under a vicarious liability theory. See, e.g., Henry v. Hess Oil V.I. Corp., 1991 St. Croix Supp. 115, slip op. at 23 (D.V.I. 1991) ("[S]ince the sole issue in [Gibson] was the employer's vicarious liability, the court's citation of those sections concerning direct liability was dictum. Therefore, the Third Circuit's affirmation without opinion only went to the proposition that the employer of an independent contractor is not vicariously liable to the contractor's employees, which is consistent with this opinion."); see also Olson v. Virgin Islands Tel. Corp., 1986 St. Thomas Supp. 204, slip op. at 3 (D.V.I. 1986); Hood v. Hess Oil V.I. Corp., 650 F. Supp. 678, 679-80 (D.V.I. 1986). Thus, while the Virgin Islands courts agree that employers cannot be held vicariously liable to employees of their independent contractor, they are divided on whether such employees can sue the employers for their direct negligence based on Chapter 15 of the Restatement.

A.

Section 413, as well as sections 416[25] and 427,[26] essentially adopts the "peculiar risk" doctrine, which developed in the latter half of the nineteenth century out of a recognition that "a landowner who chose to undertake inherently dangerous activity on his land should not escape liability for injuries to others simply by hiring an independent contractor to do the work." Privette v. Superior Court, 854 P.2d 721, 724-25 & n.2 (Cal. 1993) (in banc). The American Law Institute incorporated this doctrine in the Second Restatement under certain provisions of Chapter 15, which generally address the liability of employers

---

[25]. Section 416 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create during its progress a peculiar risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

[26]. Section 427 provides:

> One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger.

of independent contractors when they or their contractors have been negligent.

An early draft of the Second Restatement of Torts included a Special Note that excluded employees of the independent contractor from filing suit under its provisions. That note, which ultimately was not adopted, provided:

> **Special Note.** The rules stated in this Chapter are, in general, not applicable to make the defendant who hires an independent contractor liable to two classes of persons.
>
> One consists of the employees, or servants, of the defendant himself . . . .
>
> . . . .
>
> The other class of plaintiffs not included in this Chapter consists of the employees of the independent contractor. As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor, and it was the contractor who was responsible for their safety. The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. See § 343. In other respects, however, it is still largely true that the defendant has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis. While workmen's compensation acts not infrequently provide for third-party liability, it has not been regarded as necessary to impose such liability upon one

who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his contract price for the work, and so will in any case ultimately be borne by the defendant who hires him.

Again, when the Sections in this Chapter speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.

Restatement ch. 15 (Tentative Draft No. 7, 1962). The American Law Institute omitted this note, however, at the recommendation of William L. Prosser, the reporter for the Second Restatement. 39 A.L.I. Proc. 244-49 (1962). Prosser suggested the provision be dropped because of a lack of uniformity on the issue, particularly because of the effect of the various state workers' compensation acts. Id. at 246. Nevertheless, he stated that "certainly the prevailing point of view is that there is no liability on the part of the employer of the independent contractor." Id. at 247.

In the first decade after the adoption of the Restatement, courts split on whether to permit a contractor's employees to sue under the peculiar risk provisions of Chapter 15.[27] Since the early 1980s, however, an overwhelming majority

---

[27]. As the Washington Supreme Court noted in 1981:

Other jurisdictions which have faced this issue are divided over whether employers of an independent contractor owe to the employees of the contractor a nondelegable duty of care based on the presence of an inherently dangerous activity. Several jurisdictions have held that such a

of state high courts to consider the issue have held that employers are not liable to such employees,[28] with some even overruling prior interpretations of the Restatement.[29]  A majority of our sister circuits also have so ruled when called

(..continued)
> nondelegable duty is owed to employees of independent contractors.  The overwhelming number of jurisdictions which have resolved this issue have found, however, that no duty is owed by an owner to employees of an independent contractor.

Tauscher v. Puget Sound Power & Light Co., 635 P.2d 426, 429 (Wash. 1981) (en banc) (citing numerous cases) (footnotes omitted).

[28].  See Privette v. Superior Court, 854 P.2d 721, 730–31 (Cal. 1993) (in banc); Dillard v. Strecker, 877 P.2d 371, 385 (Kan. 1994); Matteuzzi v. Columbus Partnership, L.P., 866 S.W.2d 128, 131–32 (Mo. 1993) (en banc) (citing Zueck v. Oppenheimer Gateway Properties, Inc., 809 S.W.2d 384, 390 (Mo. 1991) (en banc)); Sierra Pac. Power Co. v. Rinehart, 665 P.2d 270, 273 (Nev. 1983); Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1263 (N.M. 1987) (citing New Mexico Elec. Serv. Co. v. Montanez, 551 P.2d 634 (N.M. 1976)); Tauscher v. Puget Sound Power & Light Co., 635 P.2d 426, 429–31 (Wash. 1981) (en banc); Wagner v. Continental Casualty Co., 421 N.W.2d 835, 841, 844 (Wis. 1988); Stockwell v. Parker Drilling Co., 733 P.2d 1029, 1032 (Wyo. 1987) (citing Jones v. Chevron U.S.A., Inc., 718 P.2d 890 (Wyo. 1986)); cf. Rowley v. Mayor of Baltimore, 505 A.2d 494, 503 (Md. 1986); Vertentes v. Barletta Co., 466 N.E.2d 500, 502–04 (Mass. 1984); Conover v. Northern States Power Co., 313 N.W.2d 397, 404–07 (Minn. 1981); Whitaker v. Norman, 551 N.E.2d 579, 580 (N.Y. 1989); Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 454 (N.D. 1994).  But see Sievers v. McClure, 746 P.2d 885, 887 n.2 (Alaska 1987); Elliott v. Public Serv. Co., 517 A.2d 1185, 1188 (N.H. 1986).

[29].  See, e.g., Privette, 854 P.2d at 726, 730 n.4 (overruling a line of cases stretching back more than 30 years); Zueck, 809 S.W.2d at 390.

upon to resolve the issue in cases under state[30] and federal[31]

law.

---

[30]. See, e.g., Scofi v. McKeon Constr. Co., 666 F.2d 170, 172 (5th Cir. 1982) (Florida law); Anderson v. Marathon Petroleum Co., 801 F.2d 936, 940-42 (7th Cir. 1986) (Illinois law); Vagle v. Pickands Mather & Co., 611 F.2d 1212, 1217-19 (8th Cir. 1979) (Minnesota law), cert. denied, 444 U.S. 1033 (1980); cf. Lipka v. United States, 369 F.2d 288, 292-93 (2d Cir. 1966) (New York law), cert. denied, 387 U.S. 935 (1967). But see Lindler v. District of Columbia, 502 F.2d 495, 499 (D.C. Cir. 1974) (District of Columbia law).

We have previously noted that at least one jurisdiction within this circuit follows the "minority" rule. See Toole v. United States, 588 F.2d 403, 407 (3d Cir. 1978) (citing Gonzalez v. United States Steel Corp., 374 A.2d 1334, 1339 (Pa. Super. Ct. 1977)). This result, however, does not bind us here. First, the Pennsylvania case we cited as our authority, Gonzalez, was appealed to the Pennsylvania Supreme Court, which, in affirming, declined to decide this issue. See Gonzalez v. United States Steel Corp., 398 A.2d 1378, 1384 n.10 (Pa. 1979) ("U.S. Steel argues that Section 410 (and Section 413) do not impose liability upon an employer of an independent contractor for injuries incurred by employees of the independent contractor. We agree, however, with plaintiffs that this contention was not preserved for our review."). But see Lorah v. Luppold Roofing Co., 622 A.2d 1383, 1386 n.2 (Pa. Super. Ct. 1993) ("[I]t is apparent that the law in this Commonwealth is that employees of an independent contractor are parties under §§ 416 and 427 to whom an obligation can flow."). Second, an interpretation of the Restatement by one jurisdiction within this circuit does not compel the same interpretation for another such jurisdiction. In fact, we already have predicted that New Jersey would reject the minority rule that Pennsylvania may have adopted. See Merklin v. United States, 788 F.2d 172, 176 (3d Cir. 1986) ("New Jersey would prohibit the contractor's employees from recovering against the employer. The traditional approach holds that the inherently dangerous doctrine protects only third parties and not the contractor's employees.").

[31]. See, e.g., Chavis v. Finnlines, Ltd., O/Y, 576 F.2d 1072, 1081 (4th Cir. 1978); Hess v. Upper Miss. Towing Corp., 559 F.2d 1030, 1033-35 (5th Cir. 1977) (citing numerous cases), cert. denied, 435 U.S. 924 (1978); Nelson v. United States, 639 F.2d 469, 474-79 (9th Cir. 1980); Eutsler v. United States, 376 F.2d 634, 635-37 (10th Cir. 1967); cf. Evans v. Transportacion

Most of these courts have not permitted employer liability to a contractor's employees for four fundamental reasons.  First, following the reasoning of the Restatement's unadopted Special Note, courts have noted that workers' compensation statutes preclude employees from recovering against the independent contractor, even though it oversaw and permitted the unsafe working conditions, but do not bar suits against the contractor's employer.  This result appears inequitable, particularly when the employer is indirectly paying the cost of the workers' compensation premiums:

> As one court observed, the "principal" who hires an independent contractor should be subject to no greater liability "than its [independent contractor] agent," whose exposure for injury to an employee is limited to providing workers' compensation insurance. Other courts have reasoned that the rule of workers' compensation exclusivity, which shields an independent contractor who pays workers' compensation insurance premiums from further liability to its employees for on-the-job injuries, should equally protect the property owner who, in hiring the contractor, is indirectly paying for the cost of such coverage, which the contractor presumably has calculated into the contract price.

Privette, 854 P.2d at 728 (citation omitted).[32]

A second and related reason why courts have barred employees from recovering against their employer's employer is

(..continued)
Maritime Mexicana S.S. Campeche, 639 F.2d 848, 859 (2d Cir. 1981).

[32].  For additional authority on this point, see Dillard, 877 P.2d at 385; Zueck, 809 S.W.2d at 390; Fleck, 522 N.W.2d at 451-52; Tauscher, 635 P.2d at 430-31; Wagner, 421 N.W.2d at 842-43; Merklin, 788 F.2d at 176.

that such liability is not necessary to achieve the original aims of the doctrine of peculiar risk. Liability under the doctrine is not necessary, in cases of injuries to a contractor's employees, because:

> the workers' compensation system of recovery regardless of fault achieves the identical purposes that underlie recovery under the doctrine of peculiar risk: it ensures compensation for injury by providing swift and sure compensation to employees for any workplace injury; it spreads the risk created by the performance of dangerous work to those who contract for and thus benefit from such work, by including the cost of workers' compensation insurance in the price for the contracted work; and it encourages industrial safety.

Id. at 730; see also Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 451 (N.D. 1994); Wagner v. Continental Casualty Co., 421 N.W.2d 835, 842-43 (Wis. 1988).

In fact, the third reason cited by courts for forbidding employer liability is that such liability may actually decrease workplace safety. Most employers probably would have little trouble determining those dangers that might be peculiarly risky to passers-by uninvolved in a construction project. As the Missouri Supreme Court noted, "Common sense permits a landowner to identify the potential of harm which an activity may create to persons not participating in the activity." Zueck v. Oppenheimer Gateway Properties, Inc., 809 S.W.2d 384, 387 (Mo. 1991) (en banc). Yet, the risks to a contractor's workers and the protections necessary to reduce such risks "are often beyond the owner's expertise." Id. Independent contractors are frequently,

if not usually, hired because the landowner is aware of his own lack of expertise and seeks to have the work performed as safely and efficiently as possible by hiring those possessing the expertise he lacks.

> If the landowner chooses to avoid the additional liability imposed by the inherently dangerous exception, he may choose to direct his own employees to do the work despite his and their lack of expertise. That simple choice limits the landowner's exposure to that provided under worker's compensation.  But that choice also increases the risk of injury to the employees and to innocent third parties.

Id. at 387-88 (footnote omitted).[33]  Furthermore, permitting employer liability to a contractor's employees also ignores "the fact that the economic system permits workers who presume to undertake dangerous work to bargain for an enhanced reward for assuming the danger."  Id. at 390 (footnote omitted); see also Dillard v. Strecker, 877 P.2d 371, 385 (Kan. 1994).

Finally, courts point out that employers need not be held liable to employees of an independent contractor under the peculiar risk provisions of Chapter 15 of the Restatement because other remedies exist besides workers' compensation.  A contractor's employees, along with other invitees, still have the right to sue for certain latent defects on the land, see Restatement § 343, or for "known or obvious" dangers whose harm should have been anticipated, see id. § 343A.  Cf. Tauscher v.

---

[33].  See also Dillard, 877 P.2d at 385; Fleck, 522 N.W.2d at 452; Tauscher, 635 P.2d at 431; Wagner, 421 N.W.2d at 842.

<u>Puget Sound Power & Light Co.</u>, 635 P.2d 426, 430 (Wash. 1981) (en banc); Restatement Special Note (unadopted), <u>supra</u>.

B.

We are persuaded by the reasoning of these courts; thus, we hold that, under Virgin Islands law, employees of an independent contractor are not included within the protected class of "others" under the peculiar risk provisions of Chapter 15 of the Restatement. We acknowledge that a minority of jurisdictions have held to the contrary. And we understand the concerns expressed by courts in those states, particularly that of holding tortfeasors liable for their actions and protecting workers on the job.[34] But we believe the interpretation chosen by the overwhelming majority of jurisdictions is the better rule, for the reasons already expressed.

We also believe this rule is consistent with the policies expressed in the Virgin Islands Workmen's Compensation Act, V.I. Code Ann. tit 24, §§ 251-85 (1993). As we have noted, this Act, like "other workers compensation legislation, is designed to 'provide prompt payment of benefits without regard to fault.'" Chinnery v. Government of V.I., 865 F.2d 68, 71 (3d Cir. 1989) (citations omitted). But the Act's other fundamental

---

[34]. Courts that have held employers liable to such employees under section 413 offer a variety of reasons for their decisions. A few courts, noting that section 413 is a theory of direct liability, find it appropriate to hold employers liable for their own acts of negligence. See, e.g. Moloso v. State, 644 P.2d 205, 214-15 (Alaska 1982). Some courts point out that the Special Note to the Restatement, see supra part III.A, was not adopted and thus is not entitled to deference. See, e.g., Lindler v. District of Columbia, 502 F.2d 495, 498-99 (D.C. Cir. 1974). Other courts apparently following the minority view simply seem to be adhering to longtime precedent. See, e.g., Bosak v. Hutchinson, 375 N.W.2d 333, 338 (Mich. 1985).

purpose is "to relieve employers and employees of the burden of civil litigation."  Id.  We believe our interpretation of these sections of the Restatement furthers the latter purpose of the Act without impairing the former purpose.

As a final matter, we should clarify that this holding extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427.  The courts for the Virgin Islands have attempted to distinguish the two situations,[35] but the same reasoning applies to both.[36]  In fact, most courts have cited section 413, as well as sections 416 and 427, in holding that employers are not liable to a contractor's employees under the doctrine of peculiar risk.[37]

---

[35].  See supra note 24.

[36].  See, e.g., Matteuzzi v. Columbus Partnership, L.P., 866 S.W.2d 128, 131 (Mo. 1993) (en banc) ("The same reasons . . . for rejecting a claim under § 416 are equally persuasive to reject a claim under § 413."); Stockwell v. Parker Drilling Co., 733 P.2d 1029, 1032 (Wyo. 1987) ("The same logic and reasoning applies to § 413, and we agree that § 413 also does not apply to the employee of an independent contractor.").  Courts considering the issue have explicitly refused to distinguish between these Restatement sections just because two are under the vicarious liability part of Chapter 15 and the other is under the direct liability heading. See Privette v. Superior Court, 854 P.2d 721, 725 n.2 (Cal. 1993) (in banc); cf. Dillard, 877 P.2d at 378.

[37].  See Privette, 854 P.2d at 725-26 & 725 n.2 (citing sections 413 and 416); Dillard, 877 P.2d at 375-85 (adopting reasoning of numerous cases deciding issue under sections 413, 416, and 427); Matteuzzi, 866 S.W.2d at 131-32 (citing Zueck v. Oppenheimer Gateway Properties, Inc., 809 S.W.2d 384, 386 (Mo. 1991) (en banc)) (citing sections 413, 416, and 427); Sierra Pac. Power Co. v. Rinehart, 665 P.2d 270, 273 (Nev. 1983) (citing sections 413 and 416); Valdez v. Cillessen & Son, Inc., 734 P.2d 1258, 1263 (N.M. 1987) (citing New Mexico Elec. Serv. Co. v. Montanez, 551 P.2d 634 (N.M. 1976)) (citing sections 413, 416, and 427);

C.

Applying this interpretation of the Restatement and its underlying reasoning to the facts of this case, it becomes clear why employers should not be held liable to an independent contractor's employees under section 413. The contract between the parties required Benak to obtain workers' compensation insurance; thus, as in the cases already noted, Quality Electric was "indirectly" paying for such coverage.

Furthermore, instead of using its own employees, who may have been unfamiliar with such work, Quality Electric hired Benak, a company experienced in working near power lines.[38] The accident here was tragic; such work, however, might routinely be deadly if Quality Electric and other landowners used their own inexperienced workers merely to avoid liability to third parties.

(..continued)
Tauscher v. Puget Sound Power & Light Co., 635 P.2d 426, 429-30 (Wash. 1981) (en banc) (citing sections 413, 414, 416, and 427); Wagner v. Continental Casualty Co., 421 N.W.2d 835, 841, 844 (Wis. 1988) (citing sections 413, 416, and 427); Stockwell, 733 P.2d at 1032 (citing Jones v. Chevron U.S.A., Inc., 718 P.2d 890 (Wyo. 1986)) (citing sections 413 and 416).

Other state high courts have decided that employers are not liable to an independent contractor's employees under sections 416 and 427, but did not discuss whether the rule applies to section 413. See, e.g., Vertentes v. Barletta Co., 466 N.E.2d 500, 502-04 (Mass. 1984); Conover v. Northern States Power Co., 313 N.W.2d 397, 404-07 (Minn. 1981); Fleck v. ANG Coal Gasification Co., 522 N.W.2d 445, 454 (N.D. 1994); cf. Rowley v. Mayor of Baltimore, 505 A.2d 494, 503 (Md. 1986).

[38]. As the district court noted, deposition testimony revealed that "Benak Construction had worked on other projects where the power lines were in an even closer vicinity than in the instant case, and Benak Construction did not consider the situation at the Quality Electric site to be a problem." Monk, No. 91-0077, slip op. at 10 n.9.

We also fail to see what more Quality Electric reasonably could have done to increase safety. There is no question that officials from Quality Electric and Benak discussed the power lines and their dangers. Monk, No. 91-0077, slip op. at 8-9. It also is beyond dispute that, after these discussions, Benak supervisors contacted WAPA about the power lines and that the contract required Benak to assume the responsibility for the work site and related safety precautions. Id. at 9. Although the power lines traveled over Quality Electric's land, they did not service Quality Electric but rather an adjacent property. Id. at 3 n.1. And it is clear that Quality Electric officials had given control of the site over to the independent contractor while they worked in temporary offices nearby. Id. at 7-8. Under these circumstances, the contractor, not Quality Electric, was in the best position to gauge what measures were necessary to protect the workers at the site from danger.

IV.

Based on the foregoing reasons, we will affirm the judgment of the district court.