**Chad S. GASS, Plaintiff,**

v.

**VIRGIN ISLANDS TELEPHONE CORPORATION, RACO, INC., and Ann Marie Estes, Defendants.**

**CIV. No. 1997–184 M/R.**

District Court,
Virgin Islands,
St. Croix Division.

April 19, 2001.

Thomas H. Hart, St. Croix, U.S.V.I., for plaintiff.

R. Eric Moore, St. Croix, U.S.V.I., for Virgin Islands Tel. Corp.

Daryl C. Barnes, St. Croix, U.S.V.I., for Raco, Inc.

Henry C. Smock, St. Thomas, U.S.V.I., for Ann Marie Estes.

## MEMORANDUM

MOORE, District Judge.

Chad Gass brings this action to recover damages for injuries he suffered while repairing a telephone line along a road on St. John, Virgin Islands, when a passing automobile caught a cable, wrapped it around him, and threw him several feet onto the roadway. Defendants Virgin Islands Telephone Corporation, RACO, Inc., and Ann Marie Estes each seek summary judgment.

## FACTUAL SUMMARY

The following central facts are undisputed or uncontradicted by opposing evidence. Hurricane Marilyn struck the Virgin Islands in September, 1995, bringing down many telephone lines of the Virgin Islands Telephone Corporation ["VITELCO"] on St. Thomas and St. John. In the following months, VITELCO hired numerous contractors to assist in repairing its telephone system. Among these contractors was the defendant construction firm, RACO, Inc. ["RACO"], whose employee, Chad Gass ["Gass"], is the plaintiff in this case. Another contractor was the engineering firm of Carnes, Burkett, Wiltsee & Associates ["CBW"], whose employee, Philip Day ["Day"], was the engineer who developed the work blueprints or plans for the various repair sites. The plans for the St. John sites were maintained by VITELCO at a trailer, which Day used in the mornings as a makeshift office.

On February 5, 1996, a RACO supervisor directed its foreman, Jack Bryson ["Bryson"], to take two of its linemen, Lee Fowler ["Fowler"] and the plaintiff, from St. Thomas to St. John the next morning to repair telephone lines in the field. According to Bryson, his supervisor told him to report to the VITELCO trailer and find Day, who would be his "boss" while the crew was on St. John. Bryson complained to his supervisor that three men were not enough to do the job safely, and that RACO's pickup and bucket trucks lacked certain safety equipment, including road signs. The RACO supervisor told Bryson to go ahead with just two linemen this time and that additional safety equipment would soon arrive in St. John.

The following morning, Bryson, Fowler, and Gass traveled to St. John as instructed, and Bryson reported to Day at the trailer. Mr. Day gave Bryson the work blueprint for that day's job, which required Bryson and his crew to string an aerial "slack span" cable between two telephone poles on opposite sides of South Shore Drive. Bryson did not request from Day or from any representative of VITELCO any additional safety equipment or men before starting to work.[1] Day showed the men where to get the materials for the job,

---

1. At some point, Bryson repeated to Day the complaints he had made to his supervisor the night before, namely, that he did not have enough men or safety equipment to safely perform the job, although the parties do not agree whether it was before or after the accident. Bryson claimed that he made both complaints to Day before they went out to the worksite. (*See* Bryson Dep., Oct. 19, 1998, at 26, 104.) Day agreed that he was aware that Bryson had complained to somebody about the safety equipment, but he stated that they discussed it after the accident. (*See* Day Decl., May 21, 1999, at 26–27.) Day did not

except for a length of telephone wire needed to connect to a nearby building, which he either asked or told Bryson to have one of his men pick up from an area near the job site. Day then led Bryson, Fowler, and Gass to the site and left them to do the job. No one ever told Bryson or Gass that Day worked for VITELCO.

Bryson and his crew first "framed" a pole on the left side of the two-lane road, then parked the bucket truck in the right lane, facing uphill. They placed at least one of the bucket truck's two traffic cones at the end of the truck, and turned on the truck's flashing light to alert approaching motorists of their activity. Neither Bryson nor Gass moved the bucket truck's traffic cones to block the left lane of the road adjacent to the truck, which allowed vehicles from either direction to alternate driving alongside the truck. Then, when the road was clear of traffic, Bryson laid a new cable in front of the bucket truck across the surface of the road from one telephone pole to another. He left some slack in the cable so motorists could drive over it and he could reach it from the bucket. At about this time, Bryson sent Fowler from the work site to retrieve the wire needed to take telephone service from the pole to the nearby building.[2]

Bryson described the next sequence of events:

> I got in the bucket, and I was approximately four or five feet off the ground.... I had talked to Chad about, you know, getting ready .... He was standing on the ground beside the buck-

et truck.... And I told him, I said, you know, "[j]ust go ahead and hand me that end[,] and we'll make sure there's nothing coming before," you know, so he handed me the end of the cable.... I was holding this and then the next thing[,] I started to say something to Chad and the next thing I know ... I saw the cable, which jerked it out of my hand .... [Gass] was just standing there, and it kind of coiled up like barbed wire would and wrapped around him and that is when he went across the truck.

(*See* Bryson Dep. at 42–44, 46.)

Ann Marie Estes ["Estes"] had just driven her car over the cable. Although she had observed several vehicles safely drive across the cable, Estes heard "a clanking sound" as she passed over it. (*See* Estes Aff. & 10.) She looked in her rear-view mirror and saw Gass "go into the air and come down in the road." (*See id.* & & 10, 11.) Later, Estes realized that the cable had become wrapped around the rear axle of her car. Gass suffered injuries in this accident and presently cannot recall many details. The workers' compensation insurance VITELCO required of RACO, its independent contractor and Gass' employer, has paid for his medical expenses. (*See* Def. VITELCO's Mem. Supp. Summ. J. ["Def. VITELCO's Mem."] Ex. C at & 9 (contract between RACO and VITELCO).)

On December 31, 1997, Gass brought this action against VITELCO, RACO, and Estes.

---

dispute that Bryson's truck lacked proper safety equipment. (*See id.* at 26.)

**2.** At first, Bryson stated that they were still in the material yard when Day "suggested" that he send someone for the wire while they "framed" the poles, (*see* Bryson Dep. at 35), but later, he said that Day ordered him to send a lineman to get the wire, (*see id.* at 47,

121). There is no evidence, however, that Day either suggested or ordered that Bryson send a lineman for the wire just as they were beginning to lift the cable across the road, or that he need not wait for the lineman's return before they raised the cable. It is undisputed, of course, that Day was not at the work site when Bryson sent Fowler to pick up the wire.

## DISCUSSION

The defendants advance several grounds for summary judgment. Estes argues that her conduct was not negligent as a matter of law, and joins VITELCO in contending that Gass assumed the risk of his injuries on February 6, 1996. RACO asserts that workers' compensation insurance constitutes Gass' sole remedy against his immediate employer. Finally, VITELCO argues that it is not liable for injuries suffered by the employees of its independent contractor, RACO.

Because each of the defendants must prove that no genuine dispute of material fact precludes judgment in their favor, and as the plaintiff's admissible evidence must be accepted as true and favorably construed, the Court will review the defendants' arguments *seriatim*. *See* Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Desvi, Inc. v. Continental Ins. Co.*, 968 F.2d 307, 308 (3d Cir.1992).

### I. Negligence

The elements of a negligence suit are well known: "duty, breach of duty, causation and damages." *Logan v. Abramson Enters., Inc.*, 30 V.I. 72, 73 (D.V.I.1994) (citing Restatement (Second) Of Torts 281 (1965)). Estes cannot, and does not, dispute that she bore some duty of care toward the plaintiff. Virgin Islands law provides that

[n]o person shall drive a motor vehicle on a public street or highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on the public street or highway.

V.I. Code Ann. tit. 20, § 494(a); *see also Baumann v. Canton*, 7 V.I. 60, 67 (D.V.I.App.Div.1968). Instead, Estes argues that she is entitled to summary judgment because "[n]one of the witnesses to the accident have indicated in any way that [she] was negligent," and Gass "has provided no evidence regarding the speed of [her] vehicle ... [or] the proximate cause of [his] injuries." (*See* Def. Estes' Mem. Supp. Summ. J. at 6; Def. Estes' Reply Mem. at 4.) These contentions are unfounded.

Foreman Bryson testified that, after Gass handed him the cable, Estes' vehicle "jerked it out of [his] hand." (*See* Bryson Dep. at 46.) Bryson witnessed the accident, and averred that

*excessive speed* had something to do with this accident because.... when I[saw] that cable stop that car ... actually it was hooked in and wrapped around the wheel and axle, and when it got to the end of that where it was attached to that pole, it [was] just like a length of chain, the back of that car probably came a foot off the ground.... The support cable stopped the car. If not[,] it would had drug Chad plumb under it. He was still going that way toward the car.

(*See id.* at 66–67 (emphasis added).) There is a genuine dispute about Estes' role in the accident. A jury could conclude from the preceding account that Estes drove across the telephone cable at an unreasonable speed, injuring Gass. Although Estes notes that "Bryson also specifically testified that he had no particular facts to suggest that excessive speed was involved," (*see* Def. Estes' Reply Mem. at 4), an eyewitness need not buttress his recollection with empirical studies to be worthy of belief. Estes' conduct is a proper subject for proof at trial. *See Howell v. V.I. Yacht Harbor*, 25 V.I. 140, 143 (D.V.I.

1989) ("In a negligence case where two conclusions may be reached on [the] issue of causation, the issue must be left for the jury.").

## II. Assumption of the Risk

 Traditionally, any voluntary assumption of the risk of injury by the plaintiff operated as an absolute bar to recovery. *See* RESTATEMENT (SECOND) OF TORTS § 496A ["RESTATEMENT"]. Several decades ago, the Virgin Islands adopted the comparative negligence doctrine, *see* 5 V.I.C. § 1451, to exclude negligent conduct from the scope of this defense. It is now well-settled that, under Virgin Islands law, the assumption of risk defense bars recovery only in cases involving voluntary, "*non-negligent* conduct which constitutes waiver or consent" by the plaintiff. *See Keegan v. Anchor Inns, Inc.*, 16 V.I. 635, 645 n. 8, 606 F.2d 35, 41 n. 8 (3d Cir.1979) (emphasis added); *Smollett v. Skayting Dev. Corp.*, 793 F.2d 547, 548 (3d Cir.1986); *see also Monk v. Virgin Islands Water & Power Auth.*, 32 V.I. 425, 433–34, 53 F.3d 1381, 1387–88 (3d Cir.1995) (reaffirming the continued viability of the assumption of the risk doctrine under Virgin Islands law).

 Defendants Estes and VITELCO can be granted summary judgment based on this defense only if the record conclusively demonstrates that Gass "fully understood the risk of harm to h[im]self and voluntarily chose to enter [or remain in] the area of risk." *See Monk*, 32 V.I. at 434, 53 F.3d at 1388; *Smollett*, 793 F.2d at 549 (citing RESTATEMENT § 496C). The undisputed facts must evidence the plaintiff's "awareness of and consent to a 'known or obvious' danger." *See Monk*, 32 V.I. 435, 53 F.3d at 1388; *Keegan*, 16 V.I. at 643, 606 F.2d at 38.

In *Monk*, the Court of Appeals affirmed this Court's application of the assumption of risk doctrine against a lineman who was seriously injured when he voluntarily maneuvered a steel beam too close to high tension wires that he knew were energized. *See Monk*, 32 V.I. at 435, 53 F.3d at 1388. Earlier, in *Smollett*, the Court of Appeals directed this Court to enter judgment against a woman who assumed the risk of her injury by roller-skating onto a carpeted area to avoid a fallen child. *See Smollett*, 793 F.2d at 548–49 (noting that plaintiff was "aware that there were no guardrails, that the skating area was covered with a smooth surface and was elevated, . . . that the area around the rink was carpeted, . . . . [and] that other skaters might fall down in her path").

In both *Monk* and *Smollett*, the plaintiffs were aware of the objects around them, fully understood the risk of harm, and nevertheless voluntarily began or continued the dangerous and risky activity that caused their injuries. Drawing all reasonable inferences in his favor, *see Roach v. West Indies Inv. Co.*, 42 V.I. 238, 244, 94 F.Supp.2d 634, 638 (D.V.I.App.Div. 2000), the same cannot be said for Chad Gass. Gass testified that he had no previous experience as a lineman or groundsman in laying a "slack span" of cable across a road open to traffic, or stringing it between two telephone poles with one bucket truck. He believed, but did not know for certain, that it was safe to lay the cable across the road and to perform the job as instructed, even with limited safety equipment available. (*See* Gass Dep. at 17, 59, 111–12, 115, 127.) Gass failed to see Estes' car approaching the work site and handed the cable to Bryson. (*See id.* at 70–72.) This Court cannot find that he understood the risk of injury present in the work site or work plan and nevertheless effectively consented to voluntarily "[take] his chances." *See* RESTATEMENT § 496C cmt. b.

Part of the record supports the inference that Gass took precautions for his safety, but was confronted with an unknown, dangerous situation, perhaps due to his own negligence. Other parts of the record suggest that Gass deliberately proceeded in the face of known dangers. The Court cannot adopt the second conclusion, as the defendants request, by selecting parts of the record and disregarding others. Summary judgment based on the assumption of risk doctrine is not appropriate here.

## III. Workers' Compensation As Exclusive Remedy Against RACO

■ An injured employee who receives proceeds from workers' compensation insurance paid for by his employer cannot sue that employer for negligent infliction of personal injuries. This Court has construed the Virgin Islands Workmen's Compensation Act, 24 V.I.C. §§ 251–285, to allow employees to sue their immediate employers only when there is an allegation "that the employer committed the tortious act with an actual, specific and deliberate intention to injure him." *See Ferris v. V.I. Indus. Gases, Inc.*, 23 V.I. 183, 188, 1987 WL 10225 at *3 (D.Vi.1987) (granting defendant's motion for summary judgment and denying plaintiff's motion to amend his tort claims); *see also Chinnery v. Government of the Virgin Islands*, 865 F.2d 68, 72–73 (3d Cir.1989) (reaffirming exception to exclusive remedy provided by Workmen's Compensation Act).

Chad Gass has adduced no evidence to show that RACO intentionally injured him. Rather, he argues that RACO's "egregious" conduct in instructing his crew to complete the work without sufficient safety equipment, personnel, or training reveals its intent to harm him, and directly caused his injuries. (*See* Pl.'s Mem. Opp'n to RACO's Mot. Summ. J. at 19–24.) The Court rejected a similar claim in the *Ferris* case, where the plaintiff argued that his employer intended to deliberately injure him by failing to provide him "appropriate tools, safety [equipment], and adequate instruction."

Attempts to classify [such] contentions as intentional torts are almost always unsuccessful because the actual injury remains accidental in character even where the corporate employer knowingly permitted a hazardous work condition to exist, willfully failed to provide a safe place to work or intentionally violated a safety statute.... [W]hat is being tested ... is not the degree or depravity of the employer's conduct, but rather the narrow issue of intentional versus accidental quality of the precise event producing injury.[3]

*Ferris*, 23 V.I. at 189, 1987 WL 10225 at *3–4 (citations omitted). Here, nothing suggests that Gass' injuries resulted from his "employer's conscious design" not the undisputed facts, not the plaintiff's allegations, and not reasonable inferences drawn therefrom. *See Ferris*, 23 V.I. at 191, 1987 WL 10225 at *4. RACO is entitled to summary judgment and will be dismissed as a defendant.

---

**3.** Gass seeks to circumvent *Ferris* by noting that this Court has allowed a plaintiff employee to sue the Virgin Islands Water and Power Authority for personal injuries occasioned by insufficient safety equipment and training. *See Eddy v. Virgin Islands Water & Power Auth.*, 35 V.I. 441, 446–47, 955 F.Supp. 468, 471–72 (D.Vi.1997). Eddy's complaint raised

a constitutional claim against his public utility employer, not a common-law tort claim, and thus was not subject to the exclusive remedy provisions of the Workmen's Compensation Act. *See id.* at 449–50, 955 F.Supp. at 473–74 (noting that constitutional claims "require[ ] something more than reckless indifference, but something less than specific intent").

## IV. VITELCO's Liability to Gass as Employee of Its Independent Contractor

■ VITELCO asserts that it cannot be held liable for the injuries Gass suffered while repairing its telephone lines on St. John because Gass worked for RACO, the independent contractor VITELCO employed to repair its facilities after Hurricane Marilyn. Gass, on the other hand, claims the right to sue VITELCO notwithstanding the employment relationship between his boss and VITELCO. Both Gass and VITELCO rely on chapter 15 of the Restatement (Second) of Torts, which summarizes the causes of action and respective duties growing out of the contractual relationship between one who employs an independent contractor to perform its work and the independent contractor who performs that work.

### A. Chapter 15 of the Restatement (Second) of Torts

A preliminary look at the general structure and the specific and pervasive language of the chapter will help in resolving the parties' competing positions. Chapter 15 is one of seven chapters of the Negligence Division of the Second Restatement. Comprised of sections 409 through 429, the chapter covers the "Liability of an *Employer* of an Independent Contractor." *See* RESTATEMENT div. 2, ch. 15, at 369 (emphasis added).

#### 1. Section 409 **B** General Rule of Non-liability

The first provision, section 409, recites the general rule of non-liability of the employer of an independent contractor: "General Principle. Except as stated in §§ 410–429, the employer of an independent contractor is not liable for physical harm caused to *another* by an act or omission of the contractor or his servants."

RESTATEMENT § 409 (emphasis added). The first comment defines "independent contractor" as "any person who does work for another under conditions which are not sufficient to make him a servant of the other." *See id.* cmt. a. Observe that the very first comment describes the quasi-employment relationship addressed by the chapter, one to which the ordinary principles of *respondent superior* do not apply, but for which certain limited exceptions can nonetheless be invoked for imposing liability against the independent contractor's employer. This comparative reference to a true employment relationship continues throughout chapter 15, which is divided into two topics containing the exceptions to section 409's general rule of non-liability.

#### 2. Direct Liability Provisions

Topic 1, "Harm Caused by Fault of Employers of Independent Contractors," spans sections 410 through 415 and covers an employer's direct liability for its own negligence.

> The rules stated in this Topic are principally important if ... the work entrusted to the contractor is such that the employer is not answerable for the negligence of the contractor which makes the work inadequate, or which consists of the improper manner in which the contractor and his servants perform the operative details of the work. In such a case, the employer's liability must be based upon his own personal negligence in failing to exercise reasonable care in giving the orders or directions in pursuance of which the work is to be done (see § 410); ... to exercise reasonable care to provide for the taking of such precaution, either by the contractor whom he employs or otherwise, as in advance are recognizable as necessary to enable the work to be done

safely (see § 413); ... [or] to exercise with reasonable care such control over the doing of the work as he retains to himself (see § 414) .... If the employer fails to exercise care in any one of these particulars and thereby causes injury *to others* to whom he owes a duty of care, he is answerable because of his personal fault.

RESTATEMENT div. 2, ch. 15, topic 1, introductory note, at 371 (emphasis added).[4]

Gass attempts to bring his claim within the direct liability rules covered in topic 1 by characterizing Phillip Day as a representative of VITELCO in his interactions with Bryson and RACO's linemen on St. John. (*See* Pl.'s Mem. Opp'n to VITELCO's Mot. Summ. J. at 4.) According to his theory, VITELCO is liable under section 410 because Day negligently gave the orders that caused RACO, through its supervisor Bryson, to commit the acts and omissions that resulted in Gass' injuries. (*See id.* at 7.) Alternatively, Gass' theory goes, VITELCO retained sufficient control over Bryson's safe performance of the job to render VITELCO liable under section 414 when Day failed to exercise that control with reasonable care. (*See id.* at 8–9.) For purposes of the following analysis, the Court will assume the truth of the plaintiff's assertions that "Phillip Day was an agent and servant of VITELCO and under the provision of the Restatement Agency (Second) section 220 and the doctrine of

*respondent superior,* VITELCO is legally responsible for Day's negligent acts." (*See id.* at 4.) The Court thus must resolve whether Gass, as an employee of the contractor VITELCO employed to perform its line repair work, is one of the "others" protected by the exceptions set forth in sections 410 and 414 to chapter 15's general rule of non-liability.

### a. Section 410 B Employer's Directions

Section 410, "Contractor's Conduct in Obedience to Employer's Directions," covers the employer of an independent contractor who, by directing work that is dangerous in itself or dangerous due to the manner in which it is directed to be done, treats the contractor and the contractor's employees as its own employees.

> The employer of an independent contractor is subject to the same liability for physical harm caused by an act or omission committed by the contractor pursuant to orders or directions negligently given by the employer, *as though the act or omission were that of the employer himself.*

RESTATEMENT § 410 (emphasis added); *see also id.* cmt. a. Even without examining the cases interpreting the meaning of "another" and "others" protected under chapter 15, the plain language of section 410 shows that VITELCO is not liable to Gass for the injuries he suffered as RACO's employee. As observed in the comments,

---

4. *Because Gass raises only the direct liability exceptions from topic 1, specifically, sections 410 and 414, the vicarious liability exceptions covered by topic 2, "Harm Caused by Negligence of a Carefully Selected Independent Contractor" (sections 416–429), are only indirectly relevant to the disposition of VITELCO's motion for summary judgment. The vicarious liability exceptions will be discussed below to the extent that (1) topic 2 confirms that "[t]he liability imposed is closely analogous to that of a master for the negligence of his servant," see* RESTATEMENT div. 2, ch. 15,

topic 2, introductory note, at 394, and (2) a decision of the Court of Appeals for the Third Circuit excludes the independent contractor's employees from the "others" protected by both the direct liability provisions of topic 1 and the vicarious liability provisions of topic 2 under the peculiar risk doctrine. *See Monk v. Virgin Islands Water & Power Auth.,* 32 V.I. 425, 444, 53 F.3d 1381, 1393 (3d Cir.1995) (employer not liable to independent contractor's employee either directly under section 413 or vicariously under sections 416 and 427).

section 410 is merely "an application of the broader rule that one who . . . negligently directs another to do or omit to do an act[ ] is subject to the same liability for the consequences of the other's act or omission as though it were his own." *Id.* cmt. a. Thus, if Day's negligent directions to Bryson had caused injury to a passing motorist or jogger, VITELCO would be liable to the same extent RACO would be liable. This is so because section 410 subjects VITELCO to the same liability for acts it negligently directed RACO's employee to commit as though that employee were its own. As already established, however, RACO is not liable to its employee Gass because Gass' on-the-job injuries are covered by workers' compensation insurance. It follows that if RACO is not liable to Gass, then VITELCO should likewise not be liable to Gass, even assuming VITELCO's negligence through Day was a contributing cause of the injuries he suffered while doing VITELCO's work.

### b. Section 414 B Retained Control

Section 414, the second prong of Gass' theory, is entitled "Negligence in Exercising Control Retained by Employer," and covers the employer of an independent contractor who retains some control over the work but less than the control by order or direction covered in section 410. Section 414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to

liability for physical harm *to others* for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*Id.* (emphasis added). Again, the comments look to the true employment relationship of master and servant for an interpretive guide to section 414: "The employer may, however, retain a control less than that which is necessary to subject him to liability as master. . . . Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section." *Id.* cmt. a. This pervasive reference in chapter 15 to analogous agency rules informs the analysis of the meaning of the "others" who can sue VITELCO in tort under the circumstances of this case.

### B. Early Decisions B *Munson* and *Gibson*

Since 1975, this Court through then-Chief Judge Almeric L. Christian has held that the term "others" does not include the employees of the independent contractor in the situations involving "peculiar risk" and "special danger" covered by the vicarious liability provisions of sections 416 and 427 of topic 2.[5] *See Munson v. Duval,* 11 V.I. 615, 630–33 (D.V.I.1975); RESTATEMENT § 416 ("a peculiar risk of physical harm *to others*"); *id.* § 427 ("involving a special danger *to others*"). Ten years la-

---

**5.** Topic 2, "Harm Caused by Negligence of a Carefully Selected Independent Contractor," set forth in sections 416–429, is introduced as follows:

> The rules stated in the following §§ 416–429, unlike those stated in the preceding §§ 410–415, do not rest on any personal negligence of the employer. They are rules of vicarious liability, making the employer liable for the negligence of the independent contractor, irrespective of whether the em-

ployer has himself been at fault. They arise in situations in which, for reasons of policy [so-called "non-delegable duties"], the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor. *The liability imposed is closely analogous to that of a master for the negligence of his servant.*

RESTATEMENT div. 2, ch. 15, topic 2, introductory note, at 394 (emphasis added).

ter, Judge David O'Brien expanded this ruling to include the direct liability provisions of topic 1, covering the provisions Gass relies upon here. *See Gibson v. Sullivan Trail Coal Co.,* 21 V.I. 374, 377, 608 F.Supp. 390, 392 (D.Vi.1985) ("[T]he rule in this territory [is] that an employee of an independent contractor is not included in the class of persons protected in Chapter 15, Restatement of Torts, (Second)."), *aff'd,* 782 F.2d 1028 (3d Cir.1985). In *Gibson,* this Court held that an employee of an independent contractor injured at work cannot bring an action against the employer of the independent contractor because "such an employee is not part of the protected class for whom such an action is available under Chapter 15 of the Restatement of Torts, (Second), Sections 409 through 429." *See id.* at 374, 608 F.Supp. at 391.

## C. *Monk v. Virgin Islands Water and Power Authority*

In a ruling almost exactly ten years after this Court's *Gibson* decision, the Court of Appeals for the Third Circuit held that, "under Virgin Islands law, employees of an independent contractor are not included within the protected class of 'others' under the peculiar risk provisions of Chapter 15 of the Restatement," which include both direct and vicarious liability provisions. *Monk v. Virgin Islands Water & Power Auth.,* 32 V.I. 425, 444, 53 F.3d 1381, 1393 (3d Cir.1995). Ted Monk, Jr., the plaintiff in that case and the foreman of an independent contractor, was seriously injured when he maneuvered a steel beam too close to high tension wires that he knew were energized. *See id.* at 434, 53 F.3d at 1388.

In reaching its conclusion, *Monk* joined those courts in the majority of jurisdictions that have not permitted a contractor's employees to sue under the so-called "peculiar risk" provisions of chapter 15. *See id.* at 440–41 & nn. 28 & 30–31, 53 F.3d at 1391–92 & nn. 28 & 30–31 (citing state and federal cases). Both this Court earlier in *Gibson* and the Court of Appeals in *Monk* relied on a **special note to Chapter 15 of the tentative draft of the Second Restatement, which explicitly excluded employees of the independent contractor from the rules stated in chapter 15.[6]** *See Gibson,* 21 V.I. at 376–77, 608 F.Supp. at 392; *Monk,* 32 V.I. at 438–39, 53 F.3d at 1390–91. The special note has formed the basis for many courts to decide that the employees of the independent contractor are not protected by the provisions of chapter 15, even though the American Law Institute ultimately did not include it **in the final draft of the Restatement.** The special note observed that

it is still largely true that the [contractor's employer] has no responsibility to the contractor's servants. One reason why such responsibility has not developed has been that the workman's recovery is now, with relatively few exceptions, regulated by workmen's compensation acts, the theory of which is that the insurance out of which the compensation is to be paid is to be carried by the workman's own employer, and of course premiums are to be calculated on that basis.... [I]t has not been regarded as necessary to impose [third-party] liability upon one who hires the contractor, since it is to be expected that the cost of the workmen's compensation insurance will be included by the contractor in his con-

---

**6.** The Court of Appeals in *Monk* also found persuasive the reasoning of courts in the majority of jurisdictions which have come to the same conclusion. *See Monk,* 32 V.I. at 440–44, 53 F.3d at 1391–94.

tract price for the work, and so will in any case ultimately be borne by the defendant who hires him. Again, when the Sections in this Chapter speak of liability to "another" or "others," or to "third persons," it is to be understood that the employees of the contractor, as well as those of the defendant himself, are not included.

RESTATEMENT (SECOND) OF TORTS ch. 15, special note, at 17–18 (Tentative Draft No. 7, 1962).[7]

■ Following the rationale of this special note, the Court of Appeals agreed with other courts that it would be inequitable for the workers' compensation scheme to protect the independent contractor, but not the contractor's employer, from injured employees' lawsuits, particularly when the employer is indirectly paying the cost of the workers' compensation premiums. *See Monk,* 32 V.I. at 441–42, 53 F.3d at 1392 (quoting *Privette v. Superior Court,* 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721, 728 (1993) (en banc) ("[T]he 'principal' who hires an independent contractor should be subject to no greater liability 'than its [independent contractor] agent,' whose exposure for injury to an employee is limited to providing workers' compensation insurance.") (citation omitted)). The exclusivity of workers' compensation as a remedy against the independent contractor equally protects the contractor's employer, who pays indirectly for the cost of coverage through the contract price.

The second reason given in *Monk* for barring recovery by employees against "their employer's employer" is that "such liability is not necessary to achieve the original aims of the doctrine of peculiar risk." *Id.* at 442, 53 F.3d at 1392. Workers' compensation (1) provides swift and sure compensation to the employee for any workplace injury regardless of fault, (2) spreads the risk inherent in the work to those who contract for and benefit from it by including the premium in the cost of the work, and (3) encourages industrial safety. *See id.* at 442–43, 53 F.3d at 1392–93.

The third reason cited in *Monk* is that to hold the employer liable under circumstances involving a peculiar risk might actually decrease workplace safety. The employer often hires the independent contractor to do work that is beyond its expertise. Imposing liability for injuries to the contractor's workers might prompt the employer to use its own employees to do work that they are not qualified to perform since they would be limited to workers' compensation for any injuries on the job. *See id.* at 442–43, 53 F.3d at 1392–93. Fourth and finally, *Monk* notes that employees of independent contractors can sue the contractor's employer for latent defects in the land or for "known or obvious" dangers whose harms the landowning employer should have anticipated, even if they are excluded from the protection of "others" mentioned in sections 413, 416, and 427. *See id.* at 443, 53 F.3d at 1393 (citing RESTATEMENT §§ 343, 343A).

### D. *Monk* and Sections 410 and 414

Most notably, the Court of Appeals in *Monk* expressly rejected any distinction between the vicarious liability exceptions and the direct liability exceptions to section 409, and in the process implicitly re-

---

7. William L. Prosser, the reporter for the Second Restatement of Torts, stated that "certainly the prevailing point of view is that there is no liability on the part of the employer of the independent contractor." *See Discussion of Restatement of Law Second, Torts,* 39 A.L.I. PROC. 247 (1962). He nevertheless was persuaded not to include the special note in the final draft mainly because of the lack of uniformity on the issue caused by the variation then existing among state workers' compensation acts. *See id.* at 246.

jected any limitation of its ruling to only those provisions involving a peculiar risk to others.

### 1. Neither employer negligence nor circumstances of peculiar risk determine liability to contractor's employee.

By expressly excluding the employees of an independent contractor from the scope of the term "others" in section 413, the Court of Appeals specifically rejected the idea that courts should treat the employer's liability under an exception based on the employer's own negligence (sections 410–415) any differently from its liability under an exception that imposes liability to others without regard to the employer's fault (sections 416–427). *See Monk*, 32 V.I. at 444, 53 F.3d at 1394 ("[T]his holding extends to actions under the direct liability provision of section 413, as well as the vicarious liability provisions of sections 416 and 427.").[8] In the process, the *Monk* panel also rejected the holdings and reasoning of several opinions in which this Court had previously "attempted to distinguish the two situations," noting that "the same reasoning applies to both." *Id.* at 444 & nn. 24 & 35, 53 F.3d at 1394 & nn. 24 & 35 (listing cases). In rejecting the

reasoning of those opinions, the *Monk* panel also implicitly rejected the idea that the peculiar risk itself serves as the basis for determining employer liability under any chapter 15 exception.

■■■ An examination of the district court opinions rejected by *Monk* proves that neither the involvement of a peculiar risk in the work being contracted nor the negligence of the employer has any relevance to the decision whether the contractor's employee can sue the contractor's employer. None of these rejected Virgin Islands cases involved a peculiar risk to others, and each involved an allegedly negligent employer. Moreover, two of them addressed allegations of employer liability under one of the same exceptions Gass relies upon, section 414. *See Henry v. Hess Oil V.I. Corp.*, Civ. No.1987–345, slip op. at 24 (D.V.I. St. Croix Div. Feb. 7, 1991)[9] ("[I]n the Virgin Islands, an employer of an independent contractor can be liable to the contractor's employees for the employer's own tortious acts."); *Hood v. Hess Oil V.I. Corp.*, 22 V.I. 456, 459–60, 650 F.Supp. 678, 679–80 (D.Vi.1986) (reasoning that "[a]nyone, including an employer of an independent contractor, may

---

8. The post-*Monk* decisions of the District Court appearing to resurrect, without explanation, a distinction between the direct and vicarious liability provisions of chapter 15 cannot withstand analysis. *See Carty v. Hess Oil V.I. Corp.*, 42 V.I. 125, 130 n. 9, 78 F.Supp.2d 417, 420 n. 9. (D.V.I.1999) ("While an employer of an independent contractor cannot be vicariously liable to an independent contractor's employees, direct liability for the employer's own negligence is not so barred."); *Ibrahim v. Virgin Islands Water & Power Auth.*, Civ. No.1992–227, 1996 U.S. Dist. LEXIS 22548, at *5–6, *9–10 (D.V.I. St. Thomas–St. John Div. June 28, 1996) (allowing an employee of an independent contractor to sue the contractor's employer under section 414 by implicitly relying upon the invalid distinction between direct and vicarious lia-

bility made in several pre-*Monk* decisions). *But see Figueroa v. Hess Oil V.I. Corp.*, Civ. No. 137/1997, slip. op. at 7 & n. 5 (Terr.Ct. Nov. 27, 1998) (concluding that "a careful and plain reading of the *Monk* holding in its entirety reveals that both categories of an employer's liability, whether direct or vicarious, ... are covered by [its] holding") (opinion attached to Def. VITELCO's Mem. as Ex. G).

9. The Court of Appeals cites this unpublished opinion as *Henry v. Hess Oil V.I. Corp.*, 1991 St. Croix Supp. 115, slip op. at 21 (D.V.I. 1991). *See Monk*, 32 V.I. at 444 n. 24, 53 F.3d at 1394 n. 24. The opinion, however, is not found in the St. Croix Supplement for 1991.

be held liable for his or her own negligence" (internal quotations omitted)). A third opinion endeavored to draw a broad categorical distinction between "derivative" liability and direct liability without referring to any specific section of the Restatement. *See Olson v. Virgin Islands Tel. Corp.*, Civ. Nos.1984–152, 1982–278, 1986 St. Thomas Supp. 204, slip op. at 3 (D.V.I.1986) ("An employer of an independent contractor is not shielded from liability for injuries caused by its own negligence."). The only logical conclusion flowing from *Monk*'s express rejection of the reasoning of these decisions is that the employer is insulated from suit by his contractor's employees under all the direct liability exceptions, regardless of the presence or absence of circumstances involving a peculiar risk. A look at the direct liability exception involved in *Monk*, section 413, confirms this conclusion.

Section 413 imposes liability on the employer because of its own negligence, not because of the peculiar risk involved.[10] Under section 413, "the employer's liability must be based upon his own personal negligence in failing to exercise reasonable care ... to provide for the taking of such precaution, either by the contractor whom he employs or otherwise, as in advance are recognizable as necessary to enable the work to be done safely." RESTATEMENT div. 2, ch. 15, topic 1, introductory note, at 371. Just like the other direct liability exceptions to section 409's rule of non-liability, section 413 liability arises because of the employer's own negligence; the peculiar risk involved only provides the setting upon which section 413 liability may arise.[11] This point is emphasized by the specific comments to section 413: "This Section states the rule as to the liability of the employer who fails to provide in the contract, or in some other manner, that the contractor shall take the required precautions." *Id.* § 413 cmt. a. In contrast, the other direct liability exceptions impose liability for the employer's negligence to others without regard to the presence of special or unusual risks. It therefore would make no sense whatsoever to preclude, under *Monk*, the injured employee from suing the negligent employer who has contracted out peculiarly dangerous work and failed to ensure that special precautions were taken (section 413), and yet to allow the employee to sue the negligent employer who has contracted out work that poses only ordinary risks of harm (section 410 and 414). Accordingly, that sections 410 and 414 are premised on the employer's own negligence and involve no underlying peculiar risk of harm to others is no basis for imposing liability on the independent contractor's employer.

10. Section 413, "Duty to Provide for Taking of Precautions Against Dangers Involved in Work Entrusted to Contractor," provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer (a) fails to provide in the contract that the contractor shall take such precautions, or (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

11. The origins of the vicarious liability exceptions of topic 2, which impose liability upon the non-negligent employer, lie in the concept of non-delegable duties:

> The rules stated in ... §§ 416–429, ... do not rest on any personal negligence of the employer.... They arise in situations in which, *for reasons of policy*, the employer is not permitted to shift the responsibility for the proper conduct of the work to the contractor.

RESTATEMENT div. 2, ch. 15, topic 2, introductory note, at 394 (emphasis added).

2. *The contractors' employees are not within the protections of sections 410 and 414.*

It is as consistent with the purposes of the Virgin Islands workers' compensation act to interpret the language of section 410 and the word "others" in section 414 as excluding the independent contractor's employees as it was for *Monk* to so interpret the peculiar risk sections. *See Monk*, 32 V.I. at 444, 53 F.3d at 1393 ("[T]his Act ... is designed to 'provide prompt payment of benefits without regard to fault' [and] 'to relieve employers and employees of the burden of civil litigation.'") (quoting *Chinnery v. Government of the Virgin Islands*, 865 F.2d 68, 71 (3d Cir.1989)). This interpretation similarly furthers the goal of relieving employers and employees of the burden of civil litigation without impairing the purpose of providing prompt payment of benefits to injured employees without regard to fault. *See id.* at 444, 53 F.3d at 1393–94. Indeed, a rule that would allow an employee to sue an employer in tort under any of the direct liability sections of chapter 15 would impair the purpose of our workers' compensation act and obstruct its goal of relieving the burden of civil litigation arising from the employment relationship.[12] Moreover, the special note of the restatement draft, which sustained *Monk*'s focus on workers' compensation, makes no distinction between the peculiar risk provisions and the other provisions of chapter 15.

Secondly, to allow the employee to recover against the independent contractor's employer under sections 410 and 414 would produce the same "inequitable" and anomalous result as under the peculiar risk provisions. *See, e.g., Privette*, 21 Cal.

Rptr.2d 72, 854 P.2d at 727–28. Allowing the contractor's employees to sue the contractor's employer in tort would create a class of employees with greater rights of recovery against the employer than the employer's own employees have themselves, even though those employees *do the same work for the same employer.* This inequitable anomaly is well-illustrated by the facts of this case. VITELCO hired RACO to perform the same kind of work its own construction crews do on a regular basis. VITELCO did not employ RACO because of RACO's special expertise or in place of its own employees, but rather to supplement its own crews to repair the lines and facilities extensively damaged by the hurricane. Had Gass been one of VITELCO's own employees, his exclusive remedy against VITELCO would be under the workers' compensation scheme. There is no basis in logic or equity to give him greater rights of recovery against VITELCO than the rights of one of VITELCO's own employees who is injured doing the same kind of line repairs.

 The final reason cited in *Monk* applies equally to sections 410 and 414 and also tracks the special note:

> As the common law developed, the defendant who hired the contractor was under no obligation to the servants of the contractor .... The one exception which developed was that the servants of the contractor doing work upon the defendant's land were treated as invitees of the defendant, to whom he owed a duty of reasonable care to see that the premises were safe. This is still true. *See* § 343.

RESTATEMENT (SECOND) OF TORTS ch. 15, special note, at 17 (Tentative Draft No. 7,

---

**12.** The Virgin Islands workers' compensation act "is hereby declared to be necessary in the public interest to expeditiously compensate injury or disease which arises out of and in the course of employment without regard to the negligence of the employee or the employer." 24 V.I.C. § 250(c).

1962). Regardless of the provisions of chapter 15, employees of independent contractors have the right to sue employers for latent defects on the land or for "known or obvious" dangers whose harms the employer should have anticipated. *See Monk,* 32 V.I. at 443, 53 F.3d at 1393 (citing RESTATEMENT §§ 343, 343A).[13]

■ By impliedly eliminating the presence or absence of circumstances of peculiar risk as a factor to be considered, and by expressly eliminating the distinction between the negligent and the non-negligent employer, the Court of Appeals reaffirmed the district court's decision in *Gibson* ten years before. In light of the foregoing, this Court concludes that an injured employee of an independent contractor has no cause of action in tort against the employer of that contractor under sections 410 and 414. Accordingly, the Court will grant VITELCO's motion for summary judgment.

## CONCLUSION

For the reasons set forth above, the Court will grant both RACO's and VITELCO's motions for summary judgment and deny Ann Marie Estes' motion. An appropriate order follows.

### *ORDER*

For the reasons carefully delineated in the Court's Memorandum Opinion of even date, it is hereby

**ORDERED** that the motion for summary judgment submitted by defendant Ann Marie Estes (Docket No. 77) is **DENIED,** and it is

**ORDERED** that the motions for summary judgment filed by defendants RACO, Inc. (Docket No. 102) and Virgin Islands

Telephone Corporation ["VITELCO"] (Docket No. 91) are **GRANTED.** RACO, Inc., and VITELCO are **DISMISSED** from this action.

---

**13.** Gass has no claim against VITELCO under section 343 or 343A since he was injured on a public road and not on VITELCO's land.