**Andre MARCANO, Appellant,**

v.

**HESS OIL VIRGIN ISLANDS CORP., Appellee.**

**No. CIV.A.1999/051.**

District Court, Virgin Islands,
Appellate Division,
D. St. Croix.

Considered: Sept. 28, 2001.

Filed: Sept. 30, 2002.

As Amended Jan. 30, 2003.

K. Glenda Cameron, Law Offices of Lee J. Rohn, St. Croix, VI, for Appellant.

Britain H. Bryant, Bryant, Barnes & Moss, LLP, St. Croix, VI, for Appellee.

Before: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin

Islands; THOMAS K. MOORE,[1] Judge of the District Court of the Virgin Islands; and RHYS S. HODGE, Judge of the Territorial Court, Division of ST. THOMAS and ST. JOHN, Sitting by Designation.

## OPINION OF THE COURT

FINCH, Chief Judge.

Andre Marcano appeals the March 2, 1999 Order of the Territorial Court granting summary judgment in favor of Hess Oil Virgin Islands Corporation ("HOVIC"). The sole issue presented is whether the trial court erred in granting HOVIC's motion for summary judgment.

## I. FACTS

Andre Marcano ("Marcano" or "appellant") was employed by Industrial Maintenance Corporation ("IMC"), a contractor hired by HOVIC to perform maintenance services. (Joint Appendix ("J.A.") at 215.) The contract under which IMC and HOVIC operated (CSX–0209) stated that IMC's status was that of an "independent contractor". (J.A. at 224.)

At the time pertinent to this discussion, Marcano was employed as a "B millwright" whose function was to "repair rotating equipment in the refinery" such as pumps and fans. (*Id.* at 189, 204.) As a B millwright, Marcano was under the direct supervision of IMC foreman, Jose M. Figueroa ("Figueroa"). Figueroa's recollection was that Marcano had been attempting to install a fan belt on a large piece of machinery referred to as a "fin fan" when his injury occurred.

Marcano alleges that on December 20, 1994, he and Figueroa were attempting to remove, not install, the fan belt when he

was injured. According to Marcano, he remained below and instructed Figueroa on which direction to turn the flywheel[2] during their collaborative effort to change the fan belt. At some point when Figueroa was turning the flywheel, the tip of Marcano's thumb was caught and cut off. Because of the nature of the cut, it was not stitched. The wound was bandaged, and Marcano was given antibiotics. Marcano returned to work the following day and was placed on light duty. Shortly thereafter, he filed an action for damages against HOVIC alleging that HOVIC had been negligent in the installation of the belt, had failed to provide him with manuals for the proper changing of the fan belt, and had failed to properly instruct him on the procedure for its removal. HOVIC filed a motion for summary judgment which the trial judge granted on March 2, 1999. The trial judge stated in relevant part that:

> **Control of the activity that led to the injury, was within the operational details under the purview of IMC.** Plaintiff demonstrated no contractual duty owed by the defendant concerning the machine and its safety. Evidence points to IMC employees being in control of the instrumentality at the time of the injury. It is also evident that the work being performed at the time of the injury was being done at the direction of and in conjunction with the plaintiff's IMC supervisor. **Finally the record also reveals that miscommunication between the plaintiff and his co-employee was the sole cause of the injury.** Therefore, as a matter of law, no liability can be found for the defendant HOVIC and summary judgment is appropriate.

---

1. Although Judge Moore initially sat on this appeal, he later recused himself and has taken no part in the disposition of the case.

2. A "flywheel" is defined as "a heavy wheel for opposing and moderating by its inertia any fluctuation of speed in the machinery with which it revolves." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 451 (10th ed.1996).

(Brief of Appellant, unnumbered attachment, *Marcano v. HOVIC*, No. 69/1995, slip op. at 3–4 (Terr.Ct. Mar. 3, 1999) (emphasis added).) Marcano did not seek reconsideration from the trial court, but, instead, filed this timely appeal on March 9, 1999.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has appellate jurisdiction to review the judgments and orders of the territorial court in all civil cases. v.I. CODE ANN. tit. 4, § 33 (1997 & Supp.2001); Section 23A of the Revised Organic Act of 1954. The standard of review in an appeal from a grant of summary judgment is plenary. *Virgin Islands Bldg. Specialties, Inc. v. Bucaneer Mail Assocs.*, 197 F.R.D. 256, 260 (D.V.I.App.Div.2000); *Roach v. West Indies Inv. Co.*, 42 V.I. 238, 94 F.Supp.2d 634 (D.V.I.App.Div.2000).

Summary judgment is appropriate only when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine" dispute exists when the evidence would allow a reasonable jury to return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The trial court must accept any fact advanced by the non-moving party through admissible affidavits and evidence as true and resolve any doubt in that party's favor. *See Brown v. Vitelcom, Inc.*, 41 V.I. 253, 257, 47 F.Supp.2d 595, 598 (D.Vi.1999). "On review 'the appellate court is required to apply the same test that the lower court should have utilized.'" *Carty v. Hess Oil Virgin Islands Corp.*, 42 V.I. 125, 129, 78

F.Supp.2d 417, 419 (D.V.I.App.Div.1999) (quoting *Tree of Life Distributing Co. v. National Enterprises of St. Croix, Inc.*, Civ. No.1997–30, 1998 U.S. Dist. LEXIS 17980, at *6 (D.V.I.App.Div. Nov. 5, 1998), *aff'd*, 208 F.3d 206 (3d Cir.2000)).

### B. Whether the Trial Judge Erred in Granting Summary Judgment in favor of HOVIC.

Marcano contends that HOVIC is liable because the fin fans were "improperly maintained due to H[OVIC's] negligence." For example, the fin fans required periodic replacement of the jack bolts, which were supposed to be loosened so that the belt "just fell off in your hand." (Reply Brief of Appellant at 6; *see also* Brief of Appellant at 59.) [3] In fact, Figueroa stated during his deposition that bolts were often rusted because of the "environment of the refinery," therefore, seized bolts were a "common" scenario that the millwrights had to deal with. (J.A. at 279.) Marcano further contends that HOVIC failed to provide him with manuals for the proper changing of the fan belt, and failed to properly instruct him on the procedure for its removal. (J.A. at 212.) Finally, Marcano argues that HOVIC is liable under RESTATEMENT (SECOND) OF TORTS § 414 because it controlled the workplace, and directed the manner in which the work was to be performed.

HOVIC denied negligence and argued that: 1) it had no obligation to provide manuals or instruction for the changing of the fin fan belt to Marcano, an employee of its independent contractor, IMC; and 2) HOVIC did not retain control over the details of the fin fan job. (Appellee Brief of HOVIC at 7, 29.)

---

**3.** Counsel for appellant is reminded that the Virgin Islands Rules of Appellate Procedure govern the length of briefs:

> Except by permission of the Court, principal briefs shall not exceed fifty pages, and

> reply briefs shall not exceed twenty-five pages, exclusive of pages containing the table of contents and the table of authorities.

V.I. R. App. P. 22(f).

### 1. Whether This Court can Review Marcano's Opposition to HOVIC's Motion for Summary Judgment.

Marcano suggests that the trial judge did not consider his opposition to HOVIC's motion for summary judgment. In fact, the first sentence in his brief states that "[t]he Territorial Court must have lost a portion of its file before ruling on this matter." (Brief of Appellant at 7.) HOVIC argues that there is no evidence to support this allegation, and because "Marcano did not appeal Judge Ross's denial of the motion for an extension of time to file opposition" the question of whether that denial was an abuse of discretion is waived. (Appellee Brief of HOVIC at 8.)

Marcano's suspicion that his forty-five page opposition to summary judgment was not considered is not totally unfounded. He neglects to mention, however, that he filed his motion for extension of time to respond to HOVIC's motion for summary judgment two weeks after his response was due. The trial judge did not rule on Marcano's motion for extension of time to file his opposition to summary judgment, but Marcano, nevertheless, submitted his opposition. The trial judge denied Marcano's motion for time to conduct additional discovery, and granted HOVIC's motion for summary judgment. Then, in granting summary judgment,[4] the judge referred to Marcano's "opposition to summary judgment", while focusing solely on the reasons set forth in Marcano's motion for time to conduct additional discovery. Therefore, there is arguably a question of whether the trial judge considered Marcano's opposition when he granted summary judgment. Nonetheless, assuming arguendo that the trial judge never looked at Marcano's opposition, the findings of fact and law in the opinion before this Court for review are sufficient to warrant reversal. Additionally, we find no support for HOVIC's argument that the judge's failure to rule on the motion for extension of time constitutes a denial of that motion.

### 2. Whether IMC was an Independent Contractor.

Marcano contends that although IMC is referred to in the maintenance service contract as an "independent contractor", HOVIC retains complete control over IMC. (Brief of Appellant at 31–43.) Marcano alleges that on the date of his injury, he did not receive his work permit from IMC foreman, Figueroa, but instead received that permit directly from Alton Garth Elliot ("Elliot"), a HOVIC supervisor. (*Id.* at 50.) During deposition, Elliot was asked:

Q. Did you ever give instructions to people in that area about what they should be doing?

A. To people such as—

Q. The crew.

A. The crew?

Q. Um-hum.

A. Maybe I did on that particular area, because I did on other jobs as well.

(Id. at 67–68.) Contrary to Marcano's assertion, Figueroa contends that he (Figueroa) received the permit to continue work on the fin fans directly from Elliot. Figueroa, in turn, assigned Marcano and another IMC employee, Alvin Jones ("Jones"), the task of changing the fan belt. Approximately two hours later, Figueroa came to the work area and gave Jones a task which required him to leave the immediate work area for a period of time. Jones left, and Figueroa took his place at the top of the fin fan, because two people were needed to turn the flywheel. Figueroa testified that the changing of fan belts was a routine task, and that he helped Marcano to "remove the fan belts

---

4. *Marcano v. HOVIC,* No. 69/1995, slip op. at 4 (Terr. Ct. Mar. 3, 1999).

and change them without any supervision from HOVIC." (*Id.* at 233, 264, 281.)

Despite Elliot's statement about his general practice of instructing the IMC crew directly, there was no testimony from Elliot that he gave Marcano the work permit or instructed him to change the fin fan belt. Elliot further testified that Marcano and others had complained generally about seized bolts on some fin fans, (*id.* at 69), but there was no evidence that anyone complained to Elliot about seized bolts on the fin fan in question. Regarding his level of control over employees of IMC, Elliot was asked:

Q. Did you ever tell any one of them how to change a fin fan belt?

A. No.

Q. You relied on the fact that they were millwrights?

A. Millwrights every day.

Q. And that's what they were hired to do?

A. Yeah.

Q. If a millwright encountered a belt that was difficult to change or to install, would you expect him to know how to handle it?

A. Yes. **And if he's not able, he always seeks the foreman or myself as a supervisor.** This is the obstacle I run into that prevents us from continuing my changing the belt. We would discuss it and suggest to them how it could be done.

(*Id.* at 71 (emphasis added).) Elliot's testimony does not specify what occurred on the day in question, and there is a genuine issue of material fact as to his level of control over millrights.

This Court notes that the maintenance contract between HOVIC and IMC provides:

4.6 CONTRACTOR will provide competent supervision at the project site during the progress of the work. The supervision will be satisfactory at all times to HOVIC's representative. CONTRACTOR will be bound by all communications given by HOVIC to CONTRACTOR's supervisory personnel if the communication relates to the portion of any work being directly supervised by that supervisory personnel.

(*Id.* at 220.)

In granting summary judgment the trial judge found that:

In the instant case the contractual arrangement between the parties made it clear that HOVIC retained no control over the operational methods and details of the work to be performed. See *Agreement between HOVIC and Virgin Islands Industrial Maintenance Corp.,* ¶¶ 19 and 23, pg. 12. Responsibility for the operational aspects of the work remained with the independent contractor, who is hired due to his expertise in the area. It would be illogical and inequitable to place on the owner of the premises liability for an injury resulting from an operational aspect of the work. The owner of property is under no duty to protect employees of an independent contractor from *risks arising from, intimately connected or created by the job contracted.* *Colloi v. Philadelphia Elec. Co.,* 332 Pa.Super. 284, 481 A.2d 616 (1974) citing to *Celender v. Allegheny County Sanitary Authority,* 208 Pa.Super. 390, 222 A.2d 461 (1966). (emphasis added). Responsibility for the protection of the contractor's employees is with the contractor and the employees themselves since they, rather than the contractor's employer, are in control of the workplace, have the experience in performance of the work, and are in the best position to afford such protection. *Mentzer v. Ognibene,* 408 Pa.Super. 578, 597 A.2d 604, 609 (1999).

(*Marcano v. HOVIC,* No. 69/1995, slip op. at 3 (Terr.Ct. Mar. 3, 1999)) (emphasis in

original). "[T]he extent of control retained by the employer is the threshold inquiry for determining whether a cause of action in negligence could lie against HOVIC." *Carty*, 42 V.I. at 130 n. 9, 78 F.Supp.2d at 420 n. 9. To determine whether summary judgment is appropriate, a court may examine "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." FED. R. CIV. P. 56(c). Nomenclature should not prevail over the substance of a contractual relationship, and "[g]enerally, a jury resolves the factual issue of whether the party hiring an independent contractor retained control." *Cruz v. Hess Oil Virgin Islands Corp.*, Civ. No.1993/224, slip op. at 11 (D.V.I. Apr. 29, 1996) (order denying summary judgment); *see Houston v. Linam*, Civ. No. 297/1983, 1987 U.S. Dist. LEXIS 16000, at *15 (D.V.I. Jul. 17, 1987) ("It is the substance and not the form of the arrangement which determines the legal relationship of the contracting parties to each other.") (citation omitted). In light of the evidence before the court, and resolving all reasonable inferences in favor of the non-moving party, we find that questions of fact remain on the issue of control exercised by HOVIC over the employees of IMC.

### 3. Whether the Trial Judge Erred in His Interpretation of *Monk v. WAPA*.

Marcano also contends that the trial court committed an error of law in failing to apply the theory of employer control advanced by RESTATEMENT (SECOND) OF TORTS § 414 (1965).[5] The Restatements set forth the basis for imputing a duty to the employer where the claim involves an employee of an independent contractor:

One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

RESTATEMENT (SECOND) OF TORTS § 414. The trial judge stated that:

The issue of whether an employee of an independent contractor is allowed to sue his employer's employer is one that has been before this Court on several occasions. Most notable has been the case of *Monk v. WAPA*, 53 F.3d 1381, 32 V.I. 425 (1994). The Third Circuit Court of Appeals established in *Monk* that under Chapter 15 of the Restatement of 2d of Torts, employees of an independent contractor are not included in the class of persons that are allowed to sue the employer of an independent contractor for injuries sustained as a result of the contractor's work for its employer. *Monk*, at 444 [53 F.3d 1381]. *Monk* held that *whether under the direct or vicarious liability sections of Chapter 15 of the Restatement,* a[n] *employee of an independent contractor cannot sue his employer's employer for injury sustained on the job.*

(*Marcano*, slip op. at 2–3) (emphasis added). We find the lower court's reliance on the holding in *Monk* overbroad, because the *Monk* court never specifically discussed the application of Restatement (Second) of Torts § 414.

The general principle is that the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of a contractor or his servants. RESTATEMENT (SECOND) OF

---

**5.** In the absence of local law to the contrary, the American Law Institute's various Restatements of Law are the rules of decision in the Virgin Islands. 1 V.I.C., § 4 (Butterworth 1995); *Ambrose v. National Foods Discount*, 42 V.I. 229, 231–32, 2000 WL 302694 (D.V.I.App.Div.2000).

TORTS § 409. The Restatements then set forth exceptions to this general rule. RESTATEMENT (SECOND) OF TORTS §§ 410–429. Three exceptions to the general principle involve situations where "peculiar risks" are involved. Under the peculiar risk doctrine, a landowner that chooses to undertake inherently dangerous activity on his land should not escape liability for injuries to "others" simply by hiring an independent contractor to do the work. *See* RESTATEMENT (SECOND) OF TORTS §§ 413 (direct liability),[6] 416 and 427 (vicarious liability). The *Monk* court found that "others" does not include employees of the independent contractor hired by the employer. 53 F.3d 1381, 1393, 32 V.I. 425, 444 (1994). *Monk* did not, however, address Section 414.

██ In order to impose liability on an employer of an independent contractor based upon Section 414, the plaintiff "must prove that the employer retained control over the actual conduct of the work or assumed affirmative duties with regard to safety, and that the employer was negligent in the exercise of or control of his duties." *Ibrahim v. Virgin Islands Water and Power Authority*, 1996 WL 493172 (D.Vi.1996) (citation omitted). We also note this Court's recent discussion in *Figueroa v. HOVIC*, 198 F.Supp.2d 632 (D.V.I.App.Div.2002) (Moore, J., dissenting). In *Figueroa*, we were asked to determine whether the trial court erred in concluding that *Monk* specifically precluded the employees of independent contractors from seeking damages from the contractor's employer pursuant to Section 414. In a split decision, the majority found that while *Monk* precludes direct liability under Section 413, it does not preclude liability under Section 414, and the issue of liability under Section 414 should have gone to the *Figueroa* jury. Therefore, the Court concluded that the trial judge erred in *Figueroa* when he granted summary judgment in favor of HOVIC.

Appellee also requests that this Court consider the "significant authority" in *Gass v. Virgin Islands Telephone Corporation*, 149 F.Supp.2d 205 (D.Vi.2001), an opinion which was issued after its brief had been filed. This Court granted appellee's request, and went a step further in allowing the parties to brief their respective positions in light of that decision. While highlighting similarities and differences between the instant matter and *Gass*, the parties maintained the arguments set forth thus far in this case.

As in *Figueroa*, we distinguish this case from *Gass* because

> it is clear that *Monk* did not extend to section 414 of the Restatement (Second) of Torts because that section is not a peculiar risk provision.
>
> In a recent decision, *Gass v. Virgin Islands Tel. Corp.*, 149 F.Supp.2d 205 (D.Vi[.] 2001), the trial division of this court held that the employee of an independent contractor may not sue his em-

---

6. RESTATEMENT (SECOND) OF TORTS §§ 413 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer

> (a) fails to provide in the contract that the contractor shall take such precautions, or
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

*See Carty v. HOVIC*, 42 V.I. at 130 n. 9, 78 F.Supp.2d at 420 n. 9 ("While an employer of an independent contractor cannot be vicariously liable to an independent contractor's employees, direct liability for the employer's own negligence is not so barred.").

ployer's employer under section 414 because *Monk* "*impliedly* eliminated the presence or absence of circumstances of peculiar risk as a factor to be considered". *Id.* at 220 (emphasis added). We are unpersuaded by this reasoning and find it to be an insufficient basis for rejecting what we find to be settled law in this jurisdiction—namely, that one who undertakes to perform an affirmative duty will be liable for his own negligence.

*Monk's* holding was specifically limited to the peculiar risk provisions of Chapter 15 and was heavily influenced by California law. In particular, the California Supreme Court decision *Privette v. Superior Court*, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993), was heavily relied upon. That case held that an employee of a contractor may not sue the hirer of the contractor under either version of the peculiar risk doctrine, that is, under either section 413 or section 416. *Privette*, 5 Cal.4th 689, 21 Cal. Rptr.2d 72, 854 P.2d 721 (1993); *see also Toland v. Sunland Housing Group, Inc.*, 18 Cal.4th 253, 264 n. 2, 74 Cal. Rptr.2d 878, 955 P.2d 504 (1998); *Camargo v. Tjaarda Dairy*, 25 Cal.4th 1235, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (2001) (applying the peculiar risk analysis of *Privette* to section 410, negligent hiring, and holding hirer not liable for the negligent performance of a hired contractor for injuries to the contractor's employees). When considering a hirer's liability under the peculiar risk provisions, the courts consistently distinguished the issue before them from the tort theory set forth in section 414. *Toland*, 74 Cal.Rptr.2d 878, 955 P.2d at 511 n. 2 (holding that the "grant of review did not extend to and therefore we do not decide … whether *Privette* … would preclude an employee of an independent contractor from seeking tort recovery from workplace injuries under

the theory of section 414"); *Camargo*, 25 Cal.4th at 1245, n. 2, 108 Cal.Rptr.2d 617, 25 P.3d 1096 (concluding that the consideration of section 410 should "not be read as having prejudged" application to section 414). As the California Supreme Court explained, *Privette's* conclusion simply does not extend to section 414. *Hooker v. Dept. of Trans.*, 27 Cal.4th 198, 115 Cal.Rptr.2d 853, 38 P.3d 1081 (2002).

Hence, there is simply no basis in law, to hold that one who hires an independent contractor cannot be held liable for his *own* negligence outside of the 'peculiar risk' arena. To the contrary, common law principles of negligence allow injured parties to recover against anyone who fails to carry out their affirmative duties with due care. This court declines to follow *Gass*, and to undertake such a sweeping change in the tort law of this jurisdiction, especially in light of the local law, which allows an injured employee to sue any person reasonably responsible for his injuries. Accordingly, as to its analysis and reasoning relating to section 414, *Gass* is rejected.

*Figueroa*, 198 F.Supp.2d at 637–38 (footnotes omitted) (emphasis in original). We will not depart from our holding in *Figueroa*, and so hold in this case. That is, that *Monk* does not apply to direct negligence cases where the employer of the independent contractor retains control. Because questions of fact remain on the issue of HOVIC's control in light of Section 414, the conflicting evidence should be resolved by a jury.

## CONCLUSION

For the reasons stated, this Court will vacate the order granting summary judgment and remand for further proceedings.